NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 18, 2017[*]
Decided January 18, 2017

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1523

| | |
|---|---|
| MUSTAFA-EL K.A. AJALA, (formerly known as Dennis E. Jones), *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 13-cv-638-bbc |
| WILLIAM SWIEKATOWSKI, et al., *Defendants-Appellees*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

After being disciplined for his role in a plot to incite a prison riot, Mustafa-El Ajala brought a suit under 42 U.S.C. § 1983 against prison staff, asserting that they discriminated against him because of his race (black) and religion (Muslim), and denied him procedural due process during his disciplinary hearing. The district court granted summary judgment against him on the due-process claim, and a jury eventually found against him on the discrimination claim. We affirm.

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

The facts relevant to this appeal are undisputed. Almost ten years ago, while Ajala was confined at the maximum-security Green Bay Correctional Institution, he wrote and circulated a group petition complaining about prison conditions. The petition contained language that prison administrators deemed inflammatory, including a threat that the inmates would strike if certain demands were not met. Upon further investigation, security staff learned that some gang members who had signed the petition, including Ajala, were also planning a riot so they could carry out vendettas against prison staff.

In May 2007 Lieutenant William Swiekatowski wrote a "conduct report" charging Ajala with violating prison rules by conspiring to incite a riot and commit battery. The report summarized the evidence supporting the charges: (1) Ajala admitted writing the petition and had been caught passing it to another prisoner; (2) three informants had identified Ajala as being involved in a plan to riot; (3) several other informants had told investigators about the details of the plot; (4) investigators discovered a number of improvised weapons in common areas during a search of the prison; and (5) records confirmed that Ajala and the other inmates involved in the plot had been meeting regularly. This conduct report was one of over 400 such reports that security staff wrote during their investigation, but most of those reports charged relatively minor violations of prison rules, such as contraband possession. Only seven inmates, including Ajala, were charged with the more serious violations of planning to riot and injure staff; all seven are Muslim, six are black, and one is white.

Ajala and the other six inmates appeared before Captains Michael Delvaux and Patrick Brant in June 2007 for a series of disciplinary hearings. After the inmates were given a chance to present evidence in their defense, Delvaux and Brant found all but one of them guilty of the disciplinary infractions by a preponderance of the evidence. Ajala received a year in disciplinary segregation for his role in the plot, and similar punishments were meted out to the rest of the conspirators.

After appealing unsuccessfully to the warden, Ajala sought certiorari review of the disciplinary proceedings in state court, asserting that procedural errors during the hearing violated his right to due process. Among other things, he accused the hearing officers of being biased against him because they were potential targets of the plot and because one of them had some limited knowledge of the investigation before the disciplinary hearing. The state court rejected all of Ajala's arguments in a comprehensive decision. *See State ex rel. Jones-El v. Raemisch*, No. 08 CV 1214 (Cir. Ct. Dane County. Apr. 22, 2010).

Ajala then brought a civil-rights lawsuit against over a dozen prison officials, and the district court severed Ajala's complaint into multiple suits, including this one. *See* Order, *Ajala v. Tom*, No. 3:13-cv-00102-bbc (W.D. Wis. July 31, 2013). As relevant here Ajala alleged that (1) Swiekatowski discriminated against him by singling him out for discipline because he is black and Muslim, and (2) the disciplinary-hearing officers violated his right to procedural due process.

The district court granted summary judgment against Ajala on the due-process claim, reasoning that Ajala had a reasonable opportunity to present it to the state court and that the *Rooker-Feldman* doctrine barred him from relitigating that court's ruling that his disciplinary hearing complied with due process.

The case proceeded to trial on Ajala's discrimination claim, and Ajala both testified and represented himself. The proceedings lasted two days, after which a jury returned a verdict against him.

Ajala then moved to set aside the jury's verdict as against the weight of the evidence, because, he said, certain witnesses at trial contradicted Swiekatowski's explanation why some inmates received conduct reports and others did not. The district court denied the motion, explaining that even if the evidence Ajala cited would have allowed a jury to find in his favor, the evidence was not "so one-sided as to require a new trial."

On appeal Ajala first renews his contention that he should be granted a new trial because the jury's verdict is against the manifest weight of the evidence. But before we would set aside the verdict, Ajala would need to show that "no rational jury" would have rendered it, *Saathoff v. Davis*, 826 F.3d 925, 933 (7th Cir. 2016). Ajala cannot meet that demanding standard because his argument amounts to nothing more than disagreement with the weight the jury gave to the evidence presented at trial. *See id.* Ajala urged the jury to infer discriminatory animus from Swiekatowski's decision to charge seven Muslim prisoners (all but one of whom were also black) with planning the riot. Yet Swiekatowski cogently explained why other inmates were not charged even though they were suspected of involvement in the plot: Wisconsin law prohibits prison officials from imposing discipline based on uncorroborated statements from confidential informants, *see* WIS. ADMIN. CODE DOC § 303.84(5–6) (2016). Moreover, it is undisputed that insufficient corroboration also accounted for discipline not being meted out to some black and Muslim inmates whom Swiekatowski suspected of being

involved in the plot. Ajala maintains that the jury should have rejected Swiekatowski's explanation why he did not charge inmates of other races and religions with involvement in the conspiracy, but there was nothing irrational about the jury's decision to credit Swiekatowski's explanation over Ajala's.

Ajala also contends that the district court should have instructed the jury about the burden-shifting framework we employ in assessing constitutional claims. *See Smith v. Wilson*, 705 F.3d 674, 681 (7th Cir. 2013). As Ajala sees it, the court should have told the jury that Swiekatowski had the burden of showing that his non-discriminatory reasons for writing the conduct report against Ajala were "sound" and that his actions were "narrowly tailored" to achieve a compelling governmental interest. But before Swiekatowski would have faced any burden to prove the propriety of his actions, Ajala first had to show at a minimum that those actions were "motivated in part" by a discriminatory purpose. *See id.; Bond v. Atkinson*, 728 F.3d 690, 692–93 (7th Cir. 2013). This he failed to do—the special verdict form asked if Ajala had proven, by a preponderance of the evidence, that his race or religion was "one of the reasons" that Swiekatowski issued the conduct report against him, to which the jury replied "no." Given that straightforward answer to a simple factual question, Ajala cannot show that the court's refusal to offer his proposed instructions prejudiced him. *See Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016).

Next Ajala faults the district court for not permitting him to call as witnesses two inmates who also were punished for helping plan the riot. Ajala had asked the court to have the inmates brought to court so they could testify about the races and religions of the petition signatories as well as the label "Black Muslims" attached by some at the prison to all seven of the charged inmates (even though one of them is white). The district court denied Ajala's request, concluding that (1) the probative value of this proposed testimony did not outweigh the costs and potential security risks of transporting the prisoners to the courtroom, and (2) testimony from the two witnesses would be needlessly cumulative because Ajala said he had personal knowledge of this information. In this court Ajala asserts for the first time that the district court should have entertained the possibility of allowing the two witnesses to appear by video conference, an appearance that presumably would have negated much of the burden of having three maximum-security prisoners (including Ajala) physically present in the courtroom. Ajala waived this argument by not asking the district court to consider it, *see Bell v. City of Chicago*, 835 F.3d 736, 742 (7th Cir. 2016), and he also does not explain why this testimony would have strengthened his case. Not only were the relevant facts undisputed, but the jury rejected Ajala's argument that discriminatory animus could be

inferred from the racial and religious makeup of the inmates whom Swiekatowski charged with serious disciplinary offenses. Cumulative evidence of undisputed facts would not have persuaded them to conclude otherwise.

That leaves just Ajala's argument that the district judge erred in granting summary judgment against him on his procedural due process claim under the *Rooker-Feldman* doctrine, which "prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced." *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016); *see Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). Ajala contends that the doctrine should not apply because the "limitations" of his state-court proceedings prevented him from challenging the impartiality of the disciplinary hearing officers. That assertion is patently false—the state court considered and rejected several arguments Ajala raised about why he thought the officers were biased.

We have considered the remainder of Ajala's arguments, and none has merit.

AFFIRMED.