In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 25-1399

MARION THOMAS,

*Plaintiff-Appellant,*

*v.*

DANIEL MCAULIFFE, *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-06061 — **Rebecca R. Pallmeyer**, *Judge.*

---

ARGUED FEBRUARY 17, 2026 — DECIDED MARCH 23, 2026

---

Before BRENNAN, *Chief Judge*, and RIPPLE and TAIBLESON,
*Circuit Judges.*

RIPPLE, *Circuit Judge*. Marion Thomas brought this Section
1983 action against Officer Daniel McAuliffe, Officer Michael
Botica, and the City of Chicago after he was arrested by the
defendant officers. The jury returned a verdict for the defend-
ants; Mr. Thomas moved for a new trial. The district court de-
nied his motion. For the reasons set forth in this opinion, we
affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

On November 19, 2019, Officers Michael Botica and Daniel McAuliffe, while patrolling in an unmarked car, observed Mr. Thomas's vehicle as he failed to signal a left turn. They decided to stop the vehicle. Shortly afterward, additional officers, including Officers Nicholas Morales and Juan Sanchez, arrived at the scene.

Officer Botica and Officer McAuliffe both detected, as they exited their squad car, the smell of marijuana emanating from Mr. Thomas's vehicle. Officer McAuliffe approached the driver's-side window, and Mr. Thomas rolled down his window "about two inches."[1] Officer McAuliffe testified that he could not clearly see Mr. Thomas's movements through the window because of the tint, but he could see that Mr. Thomas left the car in drive. Officer McAuliffe asked Mr. Thomas to put the car in park. Mr. Thomas complied only after the officer repeated the request three times. Officer McAuliffe also asked Mr. Thomas to roll down his window further several times, but he refused. Because of his refusal, Officer McAuliffe asked him to step out of the vehicle. Mr. Thomas also refused this request.

Officer McAuliffe opened Mr. Thomas's door, and he and Officer Sanchez pulled Mr. Thomas out of the car. Officer McAuliffe testified that Mr. Thomas "went limp" and fell to the ground, began to scream loudly and, at one point,

---

[1] R.152 at 32:24.

exclaimed that he felt like he was having a seizure.[2] The officers then placed Mr. Thomas in handcuffs and walked him to the squad car. They testified that Mr. Thomas "began kind of moving and pulling his arms and legs back and forth … in an effort to try and defeat getting placed in handcuffs."[3] Officer McAuliffe testified at trial that the initial arrest was for obstruction and resisting.

Once Mr. Thomas was restrained, two other officers searched the vehicle. They found a tray in the back seat and a partially burned marijuana cigarette (a "roach") with a lighter in the driver's-side door pocket. When one officer said, "there's a tray in the backseat, too," Mr. Thomas interjected, "No, no, no, that tray is nothing. That tray is not for rolling out. That tray is just back there. Sometimes it gets used for eating."[4] He claimed that the roach belonged to his mother.

Shortly after this exchange, a transport vehicle arrived to take Mr. Thomas to the police station. The officer driving the transport vehicle diverted to a hospital when Mr. Thomas told her that he was having a seizure. Officers Botica and McAuliffe then drove to the hospital and issued a ticket to Mr. Thomas for his failure to use a turn signal and a civil citation for the possession of marijuana.

## B.  Proceedings in the District Court

After the arrest, Mr. Thomas filed this lawsuit against Officer McAuliffe, Officer Botica, and the City of Chicago. He asserted claims of illegal search, illegal seizure, and false

---

[2] *Id.* at 43:14–16.

[3] *Id.* at 121:04–07.

[4] R.53-7 at 21:15–21:30.

arrest under 42 U.S.C. § 1983, as well as a malicious prosecution claim under state law.[5] The claims of illegal search, illegal seizure, and false arrest eventually proceeded to trial.[6]

At trial, Officer McAuliffe and Officer Morales testified to the facts of the arrest as we have just recounted them. Officer Morales also testified that they had found a "small tray and a marijuana grinder" in the vehicle.[7] Counsel for Mr. Thomas objected to this testimony but did not state a basis for the objection. The court overruled the objection. After the jury was dismissed for the day, counsel raised the issue again, explaining that the word "grinder" was not used in any of the body-worn camera footage or at Officer Morales's deposition. Later, on cross-examination, Mr. Thomas's counsel confronted Officer Morales with his deposition testimony, in which he testified, after watching body-worn camera footage, that one of the officers said they had found a "cutter." When asked about the inconsistency in verbiage, Officer Morales testified that he believed a "grinder" and a "cutter" to be the same thing. The parties ultimately stipulated to the fact that the word "grinder" was not used in any of the footage, and the court notified the jury of that stipulation prior to closing arguments.

---

[5] R.1 at 3–7.

[6] The complaint had been amended to add Officers Morales and Sanchez as defendants. R.44. The amended complaint also added a claim of excessive force under 42 U.S.C. § 1983. The court granted summary judgment on all claims against Officers Morales and Sanchez and granted summary judgment on the excessive force and malicious prosecution claims as to the remaining defendants. R.71.

[7] R.154 at 401:14–15.

Additionally, footage from the officers' body-worn cameras was shown to the jury. In one video, Mr. Thomas could be heard saying that he had no criminal record. During Mr. Thomas's cross-examination, defense counsel asked him if he had a criminal record.[8] Mr. Thomas's counsel objected; the court sustained the objection. The parties moved on without further discussion.

There was a protracted dispute between the parties about the jury instructions. Two instructions are relevant on appeal. The first of these is the "Issues" instruction, which provides in pertinent part:

> Defendants claim they did not violate Plaintiff's rights under the Fourth Amendment because they had a reasonable suspicion that Plaintiff had committed a traffic violation and probable cause that Plaintiff had committed a crime.[9]

The second is the "Authorized Acts" instruction, which provides:

---

[8] In the final pretrial conference, Mr. Thomas proposed a motion in limine barring evidence of arrests or bad acts. R.87 at 17:17–20. The motion was granted without objection. *Id.* at 18:05. The court also noted that any motion in limine is subject to reconsideration at trial. *Id.* at 17:10–13. After the body-worn camera footage was shown at trial, the court reconsidered this motion in limine, ruling that the video "open[ed] the door" to questions regarding Mr. Thomas's prior arrests. R.154 at 299:15–18, 300:07–15. Despite this, the court sustained Mr. Thomas's counsel's objection when defense counsel asked about his criminal record. *Id.* at 374:08–13.

[9] R.102 at 18.

> If a police officer has reasonable articulable suspicion to conduct a traffic stop, the motorist must comply with the officer's commands.

> If a police officer does not have reasonable articulable suspicion to conduct a traffic stop, the motorist does not need to comply with the officer's commands until the officer has probable cause to search the vehicle.[10]

On the penultimate day of trial, Mr. Thomas's counsel circulated additional revisions to the proposed jury instructions. This version deleted the "Issues" instruction on the basis that it was superfluous, unnecessary, and would serve to confuse the jury. It also deleted the "Authorized Acts" instruction and replaced it with a new instruction with two sections titled "What Constitutes Obstructing or Resisting a Law Enforcement Officer" and "What Does Not Constitute Obstructing or Resisting a Law Enforcement Officer." Counsel explained that they believed the new proposed instruction better defined "resisting."

On the final day of trial, the court presented the parties with a semi-final version of the jury instructions. The court explained that it would not include an instruction explaining that "resisting" must be physical under Illinois law. The court reasoned that because it was not the defendants' argument that Mr. Thomas resisted verbally, the distinction was not relevant. The court determined that the "Authorized Acts" instruction provided enough information to prevent the jury from finding that spoken words qualified as resistance.

---

[10] *Id.* at 27.

The jury entered a verdict in favor of the defendants, and Mr. Thomas subsequently filed a motion for a new trial. In that motion, Mr. Thomas argued, for the first time, that the "Issues" instruction was erroneous because it allowed the jury to consider whether the officers had probable cause to arrest based on the turn-signal violation or cannabis possession. He also argued that the "Authorized Acts" instruction was erroneous because it did not include a definition specifying that "resistance" must be physical.

Mr. Thomas also requested a new trial as a sanction under Federal Rule of Civil Procedure 60(b)(3) based on Officer Morales's "fabricated" testimony about the presence of a "grinder."[11] He further argued that defense counsel's question to Mr. Thomas about his criminal record justified a new trial.

The district court rejected all of Mr. Thomas's arguments. First, it ruled that Mr. Thomas's complaint with the "Issues" instruction misrepresented the law; the jury could, in fact, find that there was no false arrest if they determined that there was probable cause for *any* crime. The court also could find no error of law in the "Authorized Acts" instruction. It observed that instruction did not suggest that mere verbal argumentation constituted resisting and noted that the defendants had not argued to the contrary. The court noted that "resisting" required physical resistance and "obstructing" requires only interference, but that under the facts of the case, a jury could have reasonably concluded that Mr. Thomas had engaged in either one.

---

[11] R.114 at 12.

Turning to defense counsel's question about Mr. Thomas's record, the court concluded that Mr. Thomas was not entitled to relief. It noted that the court had stopped the questioning immediately and further observed that Mr. Thomas did not show any prejudice. Finally, the court concluded that a new trial as a sanction for Officer Morales's testimony was unwarranted because Mr. Thomas had not provided clear and convincing evidence of fraud.

## II

## DISCUSSION

### A

We begin our evaluation of Mr. Thomas's arguments by focusing on his concerns about the jury instructions. Challenges to jury instructions are reviewed de novo, but we "afford the district court substantial discretion with respect to the precise wording … so long as the final result, read as a whole, completely and correctly states the law." *Saathoff v. Davis*, 826 F.3d 925, 932 (7th Cir. 2016) (citation modified).

To win a new trial based on incorrect jury instructions, the plaintiff "must show both that (1) the instruction inadequately states Seventh Circuit law; and (2) the error likely confused or misled the jury causing prejudice …." *O'Donnell v. Caine Weiner Co.*, 935 F.3d 549, 552 (7th Cir. 2019) (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374–75 (7th Cir. 2000)).

Mr. Thomas seeks our review of two jury instructions. The first is the "Issues" instruction. Mr. Thomas submits that this instruction misrepresented the law because it impliedly instructed the jury to consider whether the defendants had probable cause to arrest him for *any* crime, rather than

instructing the jury to consider only whether there was probable cause for resisting arrest.

Mr. Thomas did not raise this specific objection at trial.[12] He raised it initially in his motion for new trial. An objection to a jury instruction may be considered on appeal when the basis of the objection is the same as the one raised before the district court at trial and in the motion for a new trial. *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729–30 (7th Cir. 2002); *see* Fed. R. Civ. P. 51(c). We nevertheless believe that, under the circumstances presented here, it is appropriate to reach the merits of Mr. Thomas's contention for two reasons. First, the defendants never raised a specific waiver or forfeiture objection in their reply to the motion for a new trial. Second, the district court did not rely in any way on waiver or forfeiture but addressed extensively the merits of Mr. Thomas's contention.

There is no error here. Under the "any crime" rule, a false arrest claim is defeated when there was probable cause to arrest the plaintiff *for any crime*, not just the crime invoked at the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). Here, the officers surely could have arrested Mr. Thomas for a turn-signal violation. *See People v. Fitzpatrick*, 986 N.E.2d 1163, 1168 (Ill. 2013).[13] It is also clear that, at the time of the encounter, they could have arrested him for a

---

[12] The only objection that Mr. Thomas raised to this instruction at trial was that it was "superfluous" and "unnecessary." R.114 at 17.

[13] Under Illinois law, a police officer may make an arrest even when an offense is punishable only by a fine. *People v. Fitzpatrick*, 986 N.E.2d 1163, 1168 (Ill. 2013).

marijuana offense based on the smell of marijuana alone. *See People v. Stout*, 477 N.E.2d 498, 502 (Ill. 1985); *People v. Hill*, 162 N.E.3d 260, 265 n.2 (Ill. 2020).[14] [15]

Mr. Thomas next challenges the "Authorized Acts" instruction. He argues that this instruction was erroneous because it did not include a definition of what constitutes resistance and obstruction under Illinois law. The defendants respond that the instructions did include such a definition. The "Underlying Crime—Obstructing/Resisting" instruction provided "a person commits obstruction or resistance of a peace officer when, (1) knowing that one is a peace officer, (2) he or she knowingly resists or obstructs (3) the officer's performance of an authorized act."[16]

Under Illinois law, "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer … of any authorized act within his or her

---

[14] At the time of Mr. Thomas's arrest, the smell of marijuana alone could create probable cause of an Illinois crime. *See People v. Stout*, 477 N.E.2d 498, 502 (Ill. 1985); *People v. Hill*, 162 N.E.3d 260, 265 n.2 (Ill. 2020). Illinois legalized the recreational use of marijuana in 2020, after Mr. Thomas's arrest. *See* Cannabis Regulation and Tax Act, 410 Ill. Comp. Stat. 705/1-1 et seq. (2020). After that development in the law, Illinois courts have held that the smell of burnt cannabis alone, without corroborating factors, does not establish probable cause. *People v. Redmond*, 248 N.E.3d 1026, 1039 (Ill. 2024).

[15] Additionally, after oral argument, Mr. Thomas filed a Notice of Supplemental Authority conceding that his conduct could have reasonably supported an arrest for obstruction.

[16] R.102 at 26.

official capacity commits a Class A misdemeanor." 720 Ill. Comp. Stat. 5/31-1 (2014).[17]

Failing to define a term of art can render a jury instruction legally erroneous or confusing. *See, e.g.*, *Dawson v. N.Y. Life Ins. Co.*, 135 F.3d 1158, 1167 (7th Cir. 1998); *DePaepe v. Gen. Motors Corp.*, 33 F.3d 737, 742 (7th Cir. 1994). But that is not the case here. When we evaluate the jury instructions as a whole, it was not necessary for either the "Authorized Acts" instruction or the "Underlying Crime—Obstructing/Resisting" instruction to define the distinction between "obstructing" and "resisting" under Illinois law. The "Authorized Acts" instruction correctly informed the jury that Mr. Thomas had an obligation to comply with the officers' commands if the officers had a reasonable suspicion that a crime had been committed. Under Illinois law, resisting requires physical resistance, but obstructing requires only a "[p]assive act[] that impede[s] an officer's ability to perform his duties." *People v. Kotlinski*, 959 N.E.2d 1230, 1240 (Ill. App. Ct. 2011); *Pryor v. Corrigan*, 124 F.4th 475, 506–07 (7th Cir. 2024) (Rovner, J. concurring in part and dissenting in part) (explaining that obstruction occurs when one materially impedes an officer's authorized acts). While the instruction did not explicitly state this, it communicated as much to the jury. The district court had "substantial discretion" over the precise wording of its instructions. *Saathoff*, 826 F.3d at 932. The instruction, as

---

[17] This statute was revised in 2023: "A person who knowingly: (1) resists arrest, or (2) obstructs the performance by one known to the person to be a peace officer … of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 Ill. Comp. Stat. 5/31-1 (2023). The changes were essentially cosmetic; the section was broken into subsections (1) and (2). The language itself was unchanged.

written, was sufficient to instruct the jury that it should consider whether Mr. Thomas's refusing to lower his window, refusing to put his car in park, refusing to exit the vehicle and falling to the ground, impeded or otherwise interfered with the defendants' lawful attempts to investigate a crime.

**B**

Mr. Thomas next submits that the district court abused its discretion by denying his motion for a new trial because of Officer Morales's trial testimony that there was a "grinder" found in Mr. Thomas's vehicle. Specifically, Officer Morales stated in his deposition that he believed that he had heard the word "cutter" in the body-worn camera footage. At trial, however, he referred to the object as a "grinder" and testified on cross-examination that he believed "cutter" and "grinder" to mean the same thing.

We review a district court's denial of a new trial for abuse of discretion. *O'Donnell*, 935 F.3d at 552. District courts have authority to grant a new trial as a sanction under Federal Rule of Civil Procedure 60(b)(3) when a party prevents a full and fair presentation at trial through fraud, misrepresentation, or misconduct. *Wickens v. Shell Oil Co.*, 620 F.3d 747, 758–59 (7th Cir. 2010). The district courts also have inherent authority to impose sanctions when a party willfully abuses the judicial process or conducts the litigation in bad faith. *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018).

The district court did not abuse its discretion. Granting a new trial as a sanction is "an extraordinary remedy granted only in exceptional circumstances." *Fields v. City of Chicago*, 981 F.3d 534, 558 (7th Cir. 2020) (citing *Wickens*, 620 F.3d at 759). Mr. Thomas has not demonstrated that Officer Morales

acted fraudulently or willfully abused the process. In his deposition, Officer Morales stated that he believed he had heard the word "cutter" in the body-worn camera footage. At trial, he referred to the object as a "grinder," and testified on cross-examination that he believed "cutter" and "grinder" to mean the same thing. This record does not demonstrate fraud or willful misconduct, but rather a disagreement, or at most a misunderstanding, about colloquial names for marijuana tools. Such a disagreement is hardly enough to justify a new trial.

The district court handled this testimony appropriately. Mr. Thomas's counsel had an opportunity to cross-examine Officer Morales on the issue and therefore was able to assess his credibility. A stipulation between the parties that the word "grinder" did not appear in the record before Officer Morales testified also made the jury aware of the inconsistency. The jury, moreover, was reminded of that stipulation before deliberation. The district court did not abuse its discretion by refusing to grant a new trial as a sanction.

## C

Mr. Thomas also contends that the district court should have granted him a new trial because defense counsel asked him about his criminal record on cross-examination. Mr. Thomas reminds us that, in *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013), we noted that "[p]resenting a § 1983 plaintiff's criminal history to the jury" presents a risk of prejudice to the plaintiff.

But Mr. Thomas's criminal history was never presented to the jury. The court sustained counsel's objection to the question and Mr. Thomas never answered the question. Moreover,

in addition to sustaining Mr. Thomas's objection, the district court instructed the jury that "questions and objections or comments by the lawyers are not evidence."[18] Such an instruction is sufficient to negate any prejudice absent a reason to think that the jury was unable or unwilling to follow the instructions. *See Soltys v. Costello*, 520 F.3d 737, 744–45 (7th Cir. 2008). Mr. Thomas has suggested no such reason.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED

---

[18] R.102 at 6.