# Illinois Official Reports

## Supreme Court

---

**People v. Hill, 2020 IL 124595**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHARLES D. HILL, Appellant. |
| Docket No. | 124595 |
| Filed | March 19, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Macon County, the Hon. Thomas E. Griffith, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, John M. McCarthy, Deputy Defender, and Zachary A. Rosen, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.<br><br>Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Garson S. Fischer, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices    JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Garman, Theis, and Neville concurred in the judgment and opinion.

Justice Michael J. Burke took no part in the decision.

**OPINION**

¶ 1    Defendant, Charles D. Hill, was charged with unlawful possession of a controlled substance, after Decatur police officer Robert Baker searched defendant's vehicle and found a small rock of crack-based cocaine under the driver's seat. During pretrial, defendant filed a motion to suppress, arguing that the officer did not have reasonable suspicion for the initial stop and that the officer did not have probable cause to search defendant's vehicle. The Macon County circuit court granted the motion based on the lack of reasonable suspicion for the initial stop but noted the subsequent search would have been valid if the initial stop was valid. The appellate court reversed and remanded. 2019 IL App (4th) 180041, ¶ 39. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018). We now affirm the appellate court's judgment, albeit on different grounds, and remand to the trial court for further proceedings.

¶ 2                                BACKGROUND

¶ 3    Before this court defendant abandons his challenge to the initial stop and now only challenges the probable cause to search his vehicle. As such, we provide only the facts relevant to whether probable cause to search defendant's vehicle was established.

¶ 4    After being charged with unlawful possession of a substance containing less than 15 grams of cocaine (720 ILCS 570/402(c) (West 2016)), defendant filed a motion to suppress evidence of the cocaine. He argued Officer Baker did not have reasonable suspicion for the stop of his vehicle and lacked probable cause for the subsequent search of his vehicle. Officer Baker was the only witness at the hearing on the motion to suppress. He testified as follows.

¶ 5    On May 29, 2017, he activated his lights to initiate a stop of defendant's vehicle based on his reasonable belief that the passenger was a known fugitive, Duane Lee. After driving a few blocks, defendant finally came to a stop. Based on his experience and training, Officer Baker knew vehicles that take a little while to stop often are concealing or destroying contraband or producing a weapon. Once stopped, Officer Baker approached the passenger side of the vehicle and had the passenger lower the window. He immediately smelled the strong odor of raw cannabis.

¶ 6    At some point, the passenger was identified as Matthew Anderson. Officer Baker could not recall at what point he realized the passenger was not Lee.

¶ 7    However, Officer Baker conducted a search of the car. According to his testimony, he searched defendant's vehicle based on the smell of raw cannabis. The search revealed cannabis

and a small rock that tested positive for crack cocaine. He testified that he could not recall the amount of cannabis recovered but that he knew it was much less than a pound or ounce.[1]

¶ 8 During redirect examination, defense counsel submitted a video of the stop into evidence. The video reveals Officer Baker approached the passenger side of the car, with his backup officer immediately behind him, and asked the identity of the passenger. Shortly after the passenger began talking, during which he stated that he got out of jail the day before, Officer Baker asked if the passenger would step out of the car. The passenger complied. Officer Baker then walked to the driver side of the car.

¶ 9 After defendant spoke, Officer Baker informed defendant that he believed the passenger was wanted on a warrant. Then, Officer Baker promptly stated that he thought the passenger was someone else. The passenger began to speak again, but Officer Baker redirected his attention to defendant and asked "I smell raw cannabis. How much is in the vehicle? Do you have any weed in the car?" Defendant denied having weed in the car and stated that he did not recently smoke cannabis.

¶ 10 The video then shows Officer Baker looked through the window into the backseat. The passenger informed Officer Baker that the smell of cannabis could be emitting off him because he smokes cannabis. Roughly 20 seconds later, Officer Baker stated, "I see a bud in the backseat. Did somebody try to rip it up and toss it out or anything?" In response, the passenger clarified he smoked early with friends but did not smoke in the car. After another squad car arrived about a minute later, Officer Baker asked defendant to step out of the car and initiated a search of the car.

¶ 11 The trial court granted the motion in part. It found that, although the passenger and Duane Lee look similar, Officer Baker had no other corroborating evidence. The basis of the stop was thus too tenuous, as Office Baker "really wasn't certain who was seated in the passenger seat." The trial court noted, however, that if it had determined the stop was valid, there was no problem with the basis for the search. The State appealed.

¶ 12 The appellate court reversed, finding Officer Baker had reasonable suspicion to stop defendant's vehicle and probable cause to search the vehicle. With respect to the search, the appellate court found the smell of cannabis established probable cause because, although it is decriminalized, a substantial number of cannabis-related activities remain unlawful. Therefore, the smell of cannabis is still suggestive of criminal activity. It further determined that to require officers to obtain facts leading to the conclusion that a criminal amount of cannabis is present before probable cause is established leads to an absurd result because officers could not investigate further unless they knew the amount involved. We allowed defendant's petition for leave to appeal, pursuant to Illinois Supreme Court Rule 315(a) (eff. July 1, 2018).

¶ 13                                         ANALYSIS

¶ 14 In reviewing a trial court's ruling on a motion to suppress, we employ the two-part standard of review adopted by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690 (1996). Under this standard, a reviewing court must give due weight to the trial court's findings of fact and will reverse only if they are against the manifest weight of the evidence.

---

[1]According to the State's response to defendant's motion to suppress, "a small amount of cannabis residue" was found.

However, this court may assess the established facts in relation to the issues and may draw its own conclusions when deciding what relief, if any, should be granted. Accordingly, we review *de novo* the trial court's ultimate ruling as to whether suppression is warranted. *People v. Bartelt*, 241 Ill. 2d 217, 226 (2011).

¶ 15    As stated above, defendant no longer challenges the initial stop of his car and only asserts there was no probable cause to search his vehicle. He contends the legalization of medical cannabis and decriminalization of small amounts of cannabis altered the police's power to conduct a warrantless search of a vehicle solely based on the odor of raw cannabis. In light of this change, defendant further requests this court to overrule *People v. Stout*, 106 Ill. 2d 77, 87 (1985), which held the odor of burnt cannabis without other corroborating evidence provides an officer probable cause to search a vehicle. Based on the record, however, we find it unnecessary to address this narrow legal issue.

¶ 16    Unlike *Stout*, the officer here relied on more than the odor of raw cannabis. Officer Baker testified that defendant delayed pulling over, which based on his training and experience often indicates the passengers of the car are hiding contraband or retrieving a weapon. Defendant argues that, because he stopped his car less than one minute after Officer Baker activated his lights, he did not take more than a reasonable amount of time to safely bring his car to a stop. However, after reviewing the video of the stop and search, it is clear defendant had multiple opportunities to safely stop his car.

¶ 17    Also, the video of the stop also revealed that Officer Baker observed a "bud" of cannabis in the backseat of defendant's car. Defendant assumes Officer Baker could not rely on his observation of a "bud" of cannabis in the backseat in establishing probable cause because he failed to collect and document such "bud." We find it unreasonable to make such inference. Defendant was provided an opportunity to cross-examine Officer Baker to elucidate whether he was mistaken about the "bud" of cannabis being in the backseat and whether such mistake was reasonable. *Heien v. North Carolina*, 574 U.S. ___, ___, 135 S. Ct. 530, 539 (2014) (fourth amendment tolerates reasonable mistakes, but "those mistakes—whether of fact or of law— must be objectively reasonable" (emphasis omitted)). However, he failed to do so. Therefore, the fact that Officer Baker observed a "bud" of cannabis in the backseat is undisputed.

¶ 18    Because the record shows more than the odor of raw cannabis was considered, we need not address the validity of *Stout* after the enactment of the Compassionate Use of Medical Cannabis Pilot Program Act (Act) (410 ILCS 130/1 *et seq.* (West 2016)) and decriminalization of possession of small amounts of cannabis. Instead, we address whether the totality of the circumstances here supported a finding of probable cause.[2]

¶ 19    The fourth amendment of the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and

___

[2]Although we do not reach whether the odor of cannabis, alone, is sufficient to establish probable cause, the smell and presence of cannabis undoubtedly remains a factor in a probable cause determination. *District of Columbia v. Wesby*, 583 U.S. ___, ___, 138 S. Ct. 577, 588 (2018) (" 'the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.' [Citation.] Thus, the panel majority should have asked whether a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the [innocent] explanation itself—that there was a 'substantial chance of criminal activity.' " (citing *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983))).

- 4 -

seizures." U.S. Const., amend. IV. This constitutional guarantee is applicable to searches and seizures conducted by the states through the due process clause of the fourteenth amendment (U.S. Const., amend. XIV). *People v. Wilson*, 228 Ill. 2d 35, 40 (2008). The cornerstone of the fourth amendment is reasonableness, which seeks to balance the interest in according discretion in enforcing the law for the community's protection and safeguarding against invasions of citizens' privacy. *People v. Jones*, 215 Ill. 2d 261, 268-69 (2005).

¶ 20    Generally, a search is *per se* unreasonable if conducted without a warrant supported by probable cause and approved by a judge or magistrate. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). The United States Supreme Court, however, has clearly recognized a few exceptions to the warrant requirement. *Jones*, 215 Ill. 2d at 269.

¶ 21    One exception was recognized in *Carroll v. United States*, 267 U.S. 132 (1925), for searches of automobiles, because their transient nature often renders it impracticable to secure a warrant before the automobile escapes the jurisdiction in which the warrant must be sought. *California v. Acevedo*, 500 U.S. 565, 569 (1991). Given this impracticability, an immediate intrusion of a vehicle is necessary if police officers are to secure the evidence of a crime or contraband. *Id.*; *Jones*, 215 Ill. 2d at 269. Therefore, a warrantless search of an automobile is not *per se* unreasonable. *Acevedo*, 500 U.S. at 569.

¶ 22    The "automobile exception," however, is no broader and no narrower than a magistrate could legitimately authorize by warrant. While a warrant is not required for a search of an automobile, officers must nevertheless have probable cause to search the vehicle. *Carroll*, 267 U.S. at 154.

¶ 23    To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity. *People v. Smith*, 95 Ill. 2d 412, 419 (1983). It is a pragmatic, nontechnical analysis of "everyday life on which reasonable and prudent persons—not legal technicians—act." *Jones*, 215 Ill. 2d at 274; accord *People v. Blitz*, 68 Ill. 2d 287, 292 (1977). In determining whether probable cause exists, officers may rely on their law-enforcement training and experience to make inferences that might evade an untrained civilian. *Jones*, 215 Ill. 2d at 274. Accordingly, a reviewing court makes this determination through the standpoint of an objectively reasonable officer. *Id.*

¶ 24    Probable cause deals with probabilities, not certainties. *Illinois v. Gates*, 462 U.S. 213, 231-32 (1982). It is a flexible, commonsense standard that "does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Therefore, probable cause does not require an officer to rule out any innocent explanations for suspicious facts. *District of Columbia v. Wesby*, 583 U.S. ___, ___, 138 S. Ct. 577, 588 (2018). Instead, it requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a reasonable man to believe there is a reasonable probability "that certain items may be contraband or stolen property or useful as evidence of a crime." *Brown*, 460 U.S. at 742; accord *Wesby*, 583 U.S. at ___, 138 S. Ct. at 588.

¶ 25    Relying on both the Act and the decriminalization of cannabis, defendant contends that the mere possession of small amounts of cannabis is no longer a criminal activity nor is contraband and is therefore insufficient to establish probable cause. Instead, courts should treat cannabis like guns, alcohol, and tobacco. Accordingly, without more facts to establish defendant

illegally possessed a criminal amount of cannabis or that a crime was committed, he argues the officers here lacked probable cause.

¶ 26    While we agree that the Act somewhat altered the status of cannabis as contraband, we nevertheless find the officer here had probable cause to search defendant's vehicle. In doing so, we address, in turn, each of defendant's authorities' impact on a probable cause determination regarding cannabis.

¶ 27    With respect to the decriminalization of cannabis, defendant contends that the legislature expressed its intent to change the status of cannabis as contraband by reducing the penalty for possession of small amounts of cannabis to only a civil violation and a fine. The State argues that decriminalization is not legalization and, thus, cannabis remains contraband.

¶ 28    In creating the automobile exception to the warrant requirement of the fourth amendment, the United States Supreme Court clearly equated "contraband" with illegality rather than unlawful acts subject to criminal penalties. See *Carroll*, 267 U.S. 132. In *Carroll*, defendant was illegally transporting liquor possessed in violation of the National Prohibition Act (Pub. L. No. 66-66, 41 Stat. 305 (1919)), which was punishable by a fine for the first offense. *Id.* at 154. The defendant there argued that, because his violation was subject only to a misdemeanor, the officer needed to smell alcohol to conclude the misdemeanor had, in fact, occurred in their presence, pursuant to the common-law requirements to arrest a person of a misdemeanor. *Id.* at 157. The Court rejected defendant's contention, finding "[t]he character of the offense for which, after the contraband liquor is found and seized, the driver can be prosecuted does not affect the validity of the seizure." *Id.* at 159.

¶ 29    While acknowledging *Carroll* involved a statute that explicitly authorized the seizure of the contraband liquor, we find its principles generally apply. No one possesses a legitimate interest in contraband. *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). The incapability of possessing a legitimate privacy interest in an item is the result of the legislature's public policy determination to prohibit the possession of such item, not from the punishment attached thereto. See *Carroll*, 267 U.S. at 158-59; see also *Warden v. Hayden*, 387 U.S. 294, 303 (1967). As such, whether a defendant is subject to criminal penalties is irrelevant in determining whether an item is contraband. See *Commonwealth v. Cruz*, 945 N.E.2d 899, 911 (Mass. 2011) ("[D]ecriminalization is not synonymous with legalization. [Citation.] Because cannabis remains unlawful to possess, any amount of marijuana is considered contraband."). To hold otherwise leads to the absurd conclusion that persons could have a legitimate privacy interest in an item that remains illegal to possess.

¶ 30    The foregoing definition is also supported by the standard definitions found in dictionaries, which we rely upon to ascertain the meaning of terms. For example, Merriam-Webster's dictionary defines contraband as "illegal or prohibited traffic in goods" and "goods or merchandise whose importation, exportation, or possession is forbidden." Merriam-Webster's Collegiate Dictionary 271 (11th ed. 2003). Similarly, Black's Law Dictionary, which defendant relies on, defines contraband as "[i]llegal or prohibited trade; smuggling" and "[g]oods that are unlawful to import, export, produce or possess." Black's Law Dictionary 365 (9th ed. 2009). Contraband therefore encompasses all items that are unlawful to possess, regardless of the accompanying penalty.

¶ 31    Based on this construction, defendant's argument regarding decriminalization of cannabis is fatally flawed. While the decriminalization of cannabis diminished the penalty for possession

- 6 -

of no more than 10 grams of cannabis to a civil law violation punishable by a fine, possession of cannabis remained illegal. 720 ILCS 550/4(a) (West 2016). Accordingly, the decriminalization of possessing small amounts of cannabis did not alter the status of cannabis as contraband.

¶ 32    The Act, however, supports defendant's argument that cannabis is no longer contraband in every circumstance. The Act permits possession of a determinative amount of cannabis for registered, qualifying patients. 410 ILCS 130/25(a) (West 2016). It further provides that possession of cannabis in accordance with the Act is not subject to forfeiture or seizure. *Id.* § 25(k). Because medical users are capable of legally possessing cannabis, we agree with defendant that possession of cannabis is not contraband for medical users.

¶ 33    According to defendant, because cannabis may legally be owned in some circumstances, the officers here needed more facts to suggest the cannabis was illegally owned or connected to another criminal activity. We disagree.

¶ 34    While the mere presence of cannabis for medical users may no longer be immediately attributable to criminal activity or possession of contraband, such users must possess and use cannabis in accordance with the Act. Notably, section 11-502.1 of the Illinois Vehicle Code prohibits any driver or passenger, who is a medical cannabis cardholder, from possessing cannabis within an area of the motor vehicle "except in a sealed, tamper-evident medical cannabis container." 625 ILCS 5/11-502.1(b), (c) (West 2016); see 410 ILCS 130/30(a)(5) (West 2016) (the Act does not allow any person to violate section 11-502.1 of the Illinois Vehicle Code). Violation of this provision constitutes a Class A misdemeanor. 625 ILCS 11-502.1(d)(1) (West 2016).

¶ 35    In applying the above principles here, we find the officers had probable cause to search defendant's vehicle. Officer Baker testified that defendant delayed in pulling over and, based on his experience, vehicles that delay in pulling over often are hiding contraband or retrieving a weapon. In conducting the stop, the passenger revealed that he smokes cannabis and did so earlier that day. Further, Officer Baker saw a loose "bud" in the backseat and smelled a strong odor of cannabis, which, together, indicate that cannabis was in the car and, likely, not properly contained. As such, even if the officer presumed defendant was in legal possession of cannabis pursuant to the Act, the facts here established probable cause that evidence of a crime was in the vehicle.

¶ 36    This conclusion comports with this court's treatment of alcohol, which defendant asserts this court should treat analogously to cannabis based on the recent changes in our laws. Similar to cannabis, possession of alcohol is lawful under some circumstances but remains unlawful under other circumstances. *Id.* § 11-502 (illegal to transport alcohol within the passenger area of a vehicle, unless in the original container with the seal unbroken); 235 ILCS 5/6-16 (West 2016) (illegal for persons under 21 years old to possess alcohol). One such unlawful circumstance, illegal transportation of alcohol, was discussed in *Smith*, 95 Ill. 2d 412. Although the mere possession of alcohol is legal, this court nevertheless held that the officer there had probable cause to search for alcohol in a vehicle where the officer smelled alcohol and observed a bottle in a brown paper bag in the vehicle. *Id.* at 416, 419. Multiple districts of our appellate court have also found probable cause to search a vehicle under similar circumstances. *People v. Gray*, 95 Ill. App. 3d 879, 882 (3d Dist. 1981) (officer had probable cause to arrest defendant for illegal transportation of open liquor upon seeing two open beer cans, which

smelled like beer, in his truck in plain view); *People v. Zeller*, 51 Ill. App. 2d 935 (1st Dist. 1977) (probable cause established by observation of an open beer can and a puddle near the can, although officer did not detect the odor of alcohol); see *People v. Corrigan*, 45 Ill. App. 3d 502 (4th Dist. 1977) (search of a glove compartment was justified where officer smelled alcohol, observed damp spot on car floor, and saw liquid dripping from the glove compartment).

¶ 37 In light of these authorities and what is shown by the record, we find the facts available to the officer would put a reasonably prudent person on notice that the vehicle contained contraband or evidence of a crime.

¶ 38                                                   CONCLUSION

¶ 39 For the foregoing reasons, we hold that there was probable cause to search defendant's car. The judgment of the appellate court is therefore affirmed, and the cause is remanded to the circuit court for further proceedings.

¶ 40 Appellate court judgment affirmed.

¶ 41 Circuit court judgment reversed.

¶ 42 Cause remanded.

¶ 43 JUSTICE MICHAEL J. BURKE took no part in the consideration or decision of this case.