2022 IL App (3d) 210524

Opinion filed November 15, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois. |
| Plaintiff-Appellant, | ) ) | Appeal No. 3-21-0524 |
| v. | ) ) | Circuit Nos. 20-CL-27 and 20-TR-3348 |
| RYAN SHAVAR DON REDMOND, | ) ) | The Honorable Daniel P. Dalton, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Daugherity and Hettel concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Following a traffic stop and subsequent search of his vehicle, the defendant, Ryan Shavar

Don Redmond, was charged with unlawful possession of cannabis (720 ILCS 550/4(a) (West

2020)). He filed a motion to suppress evidence, alleging that the officer who stopped him lacked

probable cause to search his vehicle. After a hearing, the circuit court granted the motion, and the

State appealed. On appeal, the State argues that the circuit court erred when it found that the odor

of burnt cannabis emitting from a vehicle was insufficient to support a probable cause

determination. We affirm.

I. BACKGROUND

¶ 3   On the night of September 15, 2020, Illinois State Police officer Hayden Combs was in his parked squad car around mile marker 19 on Interstate 80 in Henry County when he observed a silver Kia sport utility vehicle with an improperly secured license plate traveling three miles per hour above the speed limit. Combs effectuated a traffic stop of the vehicle, which was being driven by Redmond. Redmond pulled over immediately, and he did not make any furtive movements.

¶ 4   Combs approached the passenger side of the vehicle, and Redmond rolled down the window. Combs testified that he smelled a strong odor of burnt cannabis emanating from the vehicle. He did not see anything in the vehicle that was lit or emitting the odor. When Combs asked about the odor, Redmond stated that he had not smoked cannabis in the vehicle.

¶ 5   Combs also asked Redmond for his license and registration, which he was unable to provide. Combs then asked Redmond to step out of the vehicle, and Redmond complied. He could not recall whether he smelled the odor of burnt cannabis on Redmond's person. Combs also admitted that Redmond did not exhibit any signs of impairment.

¶ 6   Combs led Redmond to the front of the squad car and conducted a pat-down search. Combs also read Redmond his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), told him he was not free to leave, and then asked him numerous questions, including about the nature of his trip. Redmond said he was coming from Des Moines, Iowa, where he had been staying with a girlfriend due to COVID, and headed to Chicago, Illinois, where he lived. Combs testified that he construed Redmond's comment that he was "staying" in Des Moines as a statement that he was "living" there. Combs further claimed that Redmond did not give a straight answer on his address or the purpose of his trip.

¶ 7          Combs was able to retrieve Redmond's driver's license information, which revealed a valid Illinois license with a Chicago address. Further, Redmond told Combs that the vehicle had been rented for him by a friend in Des Moines because he did not have a debit card to be able to rent it himself.

¶ 8          Combs stated that "a large portion" of his decision to search the vehicle was based on the smell of burnt cannabis. He also stated that, based on his training and experience, "I-80 is a known drug corridor across the United States" and "Des Moines, Iowa is a hub of criminal activity and so is Chicago, Illinois." He admitted that he thought he had probable cause to search the vehicle based solely on the smell of burnt cannabis. He also stated that the smell of burnt cannabis caused him to suspect a violation of the statute prohibiting the smoking of cannabis in a vehicle. He was also concerned that there may have been improperly packaged cannabis or an unlawful amount of it in the vehicle.

¶ 9          Combs found a plastic bag containing approximately one gram of cannabis in the center console of Redmond's vehicle. Redmond was given a citation for a misdemeanor violation of section 4(a) of the Cannabis Control Act (720 ILCS 550/4(a) (West 2020)).

¶ 10          On June 29, 2021, Redmond filed a motion to suppress the cannabis, which alleged that the mere odor of burnt cannabis did not provide Combs with probable cause to conduct a search of the vehicle Redmond was driving. The circuit court held a hearing on Redmond's motion on August 4, 2021, at which only Combs testified. At the close of the hearing, the court took the matter under advisement.

¶ 11          On November 10, 2021, the circuit court issued a written order granting Redmond's motion to suppress. The court characterized the issue as "whether the smell of burnt cannabis is sufficient to provide probable cause to search the defendant's vehicle." The court found that the

legalization of cannabis in Illinois rendered older case law distinguishable and emphasized that Combs did not observe any indicators to suggest Redmond had recently used cannabis. The court also dismissed Combs's other comments about the circumstances, finding Combs's claims that Interstate 80 was a "trafficking corridor" and that Redmond's answers to certain questions indicated that he was engaged in illegal activity were unpersuasive. Lastly, the court concluded:

> "If the court were to find that the smell of cannabis (whether it be raw or burnt) is, standing alone, probable cause to search a vehicle, it would create an untenable situation. A person could exercise his statutory right to possess and consume cannabis only to give up his rights under the Fourth Amendment with no evidence that he possessed or consumed cannabis illegally. This court declines to impose that choice upon the defendant or any other similarly situated individual. Accordingly, this court finds the search of Mr. Redmond's vehicle to be in violation of his Fourth Amendment rights. The motion to suppress is allowed."

¶ 12    The State appealed.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, the State argues that the circuit court erred when it found that the odor of burnt cannabis, emitting from a vehicle, could not support a probable cause determination.

¶ 15    When reviewing a circuit court's decision on a motion to suppress evidence, we employ a two-part standard of review. *People v. Hill*, 2020 IL 124595, ¶ 14. First, we accord great deference to the circuit court's factual findings and reverse them only if they are against the manifest weight of the evidence. *Id.* Second, we review *de novo* the circuit court's ultimate legal conclusion on the motion to suppress. *Id.* We also note that when the facts are uncontroverted, as

4

they are in this case, our review is *de novo. People v. Stribling*, 2022 IL App (3d) 210098, ¶ 9 (citing *People v. Krueger*, 175 Ill. 2d 60, 64 (1996)).

¶ 16    In part, the fourth amendment protects citizens from unreasonable searches. U.S. Const., amend. IV. Warrantless searches are presumed to be unreasonable except in limited circumstances. *Stribling*, 2022 IL App (3d) 210098, ¶ 10. Under the automobile exception to the warrant requirement, "a warrantless search of a vehicle is not *per se* unreasonable as the transient nature of vehicles renders it unfeasible to secure a warrant before the vehicle leaves the jurisdiction, with the potential evidence of a crime or contraband in tow." *Id.* The warrantless search of a vehicle is permitted when the officer has probable cause to conduct the search. *Id.* "Probable cause exists where the facts and circumstances known to the officer at the time would warrant a reasonable person to believe there is a reasonable probability that the automobile contains contraband or evidence of criminal activity." *Id.* The circumstances are examined through the viewpoint of an objectively reasonable officer, who is allowed to rely on his or her training and experience. *Hill*, 2020 IL 124595, ¶ 23.

¶ 17    It is important to recognize that "[p]robable cause deals with probabilities, not certainties." *Id.* ¶ 24. An officer need not rule out innocent explanations for facts he or she deems suspicious. *Id.* Rather, probable cause "requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a reasonable man to believe there is a reasonable probability 'that certain items may be contraband or stolen property or useful as evidence of a crime.' " *Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

¶ 18    Here, the State argues in part that case law still requires a holding that the odor of burnt cannabis is sufficient to support a probable cause finding. This contention ignores the impact of subsequent changes in the underlying law. The legislature can change the law as it sees fit,

5

subject to constitutional requirements. *Cf. Fure v. Sherman Hospital*, 64 Ill. App. 3d 259, 267 (1978). Legislative action can moderate, or even totally negate, the impact, the applicability, and the pertinence of prevailing case law. There have been such changes in the law regarding cannabis possession and use in Illinois. Cases such as *People v. Stout*, 106 Ill. 2d 77, 87 (1985) (holding that the odor of burnt cannabis without other corroborating evidence was sufficient to establish probable cause to search a vehicle), interpreted the law when all cannabis possession was illegal. With the changes brought about by the Cannabis Regulation and Tax Act (410 ILCS 705/1-1 *et seq.* (West 2020)), those cases are no longer applicable. See *Stribling*, 2022 IL App (3d) 210098, ¶ 29 (holding that "the supreme court's holding in *Stout* is no longer applicable to postlegalization fact patterns").

¶ 19       In *Stribling*, a different panel of this court recently addressed the exact issue presented by this appeal. In that thorough and well-reasoned decision, the *Stribling* court first examined the history of cannabis regulation in Illinois. *Id.* ¶¶ 14-24. In part, the *Stribling* court noted that when all cannabis was illegal, our supreme court held in *Stout* that "when a trained and experienced police officer detects the odor of cannabis emanating from a defendant's vehicle, the odor alone provided sufficient enough probable cause to search the vehicle under the automobile exception." *Id.* ¶ 15 (citing *Stout*, 106 Ill. 2d at 88). Next, it was noted that the possession of medical cannabis was partially allowed by the legislature in 2013 with the enactment of the Compassionate Use of Medical Cannabis Pilot Program Act (410 ILCS 130/1 *et seq.* (West 2014)). *Stribling*, 2022 IL App (3d) 210098, ¶ 17. Subsequently, our supreme court decided *Hill*, which held, *inter alia*, that even after the change to the law regarding medical cannabis, the odor of raw cannabis could still *contribute* to the probable cause determination when other

corroborating factors were also present. *Id.* ¶ 21. It was also noted that in *Hill*, the corroborating factors were that

> "(1) [the officer's] training and experience indicated that the passengers in the car were hiding contraband or retrieving a weapon when the defendant delayed pulling over and (2) [the officer] 'saw a loose "bud" in the back seat and smelled a strong odor of cannabis, which, together, indicate[d] that cannabis was in the car and, likely, not properly contained.' " *Id.* ¶ 20 (quoting *Hill*, 2020 IL 124595, ¶ 35).

¶ 20       The *Stribling* court then summarized the major change to the law regarding cannabis possession that took effect on January 1, 2020:

> "Since *Hill*, Illinois became the eleventh state to legalize marijuana for adult, recreational use. As of January 1, 2020, under the Cannabis Regulation and Tax Act (410 ILCS 705/1-1 *et seq.* (West 2020)), an Illinois resident 21 years of age or older may possess up to and including 30 grams of cannabis, up to 500 milligrams of tetrahydrocannabinol (THC) in a cannabis-infused product, and 5 grams of cannabis concentrate. *Id.* § 10-10. Possession of more than these quantities and delivery of any amount remains illegal and subject to the penalties previously set. 720 ILCS 550/4(a), (b) (West 2020). Cannabis may not be possessed in a vehicle unless it is in a 'reasonably secured, sealed container and reasonably inaccessible while the vehicle is moving.' 410 ILCS 705/10-35(a)(2)(D) (West 2020). Moreover, a person may not use cannabis while in a vehicle (*id.* § 10-35(a)(3)(D)) or drive a vehicle if the

7

person has, within two hours of driving or being in actual physical control of a vehicle, a THC concentration in their blood or urine of either 5 nanograms or more of delta-9-THC per milliliter of whole blood or 10 nanograms or more of delta-9-THC per milliliter of other bodily substance (*id.* § 10-35(a)(5); 625 ILCS 5/11-501(a)(7) (West 2020); 625 ILCS 5/11-501.2(a) (West 2020)). The cannabis concentration limitations on driving do not apply if the person is a licensed patient under the Compassionate Use of Medical Cannabis Program Act. 625 ILCS 5/11-501(a)(7) (West 2020). In that case, the licensed patient may not drive a vehicle if impaired by the use of cannabis. *Id.*" *Id.* ¶ 23.

¶ 21    Next, the *Stribling* court examined the question of whether the enactment of the Cannabis Regulation and Tax Act had changed the probable cause determination for cannabis. *Id.* ¶ 24. That question was answered in the affirmative and resulted in a holding that "the smell of the burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search the vehicle." *Id.* ¶ 29. That holding was fully consistent with the supreme court's decision in *Hill*.

¶ 22    As was the case in *Stribling*, there are no corroborating factors in this case to provide Combs with probable cause to search Redmond's vehicle. Here, Combs merely smelled a strong odor of burnt cannabis emanating from inside the vehicle driven by Redmond, leading him to suspect that Redmond had smoked cannabis inside the vehicle. Redmond did not delay pulling over or make any furtive movements, he rolled down the window when Combs came to the passenger side of the vehicle, and Combs did not observe any cannabis or related drug

8

paraphernalia in the vehicle, smoke in the vehicle, or signs of impairment in Redmond.[1] Redmond also told Combs that he had not smoked cannabis in the vehicle. Further, there was no odor of raw cannabis nor any other factor indicative of improperly packaged cannabis or an unlawful amount of it in the vehicle, despite Combs's claim that he was concerned about such matters.

¶ 23    Additionally, neither Redmond's driving of a vehicle on Interstate 80 nor the fact that the vehicle was rented provided any rational support for Combs's suspicions. While Combs claimed Interstate 80 was a "known drug corridor," Combs acted on a suspicion of Redmond having smoked cannabis in a vehicle, not that he was a drug courier. Further, it is not reasonable to assume that all persons driving or riding in vehicles—including rented vehicles—traveling on such a major interstate highway are involved in narcotics-related activities. Combs's claim, if taken to its logical conclusion, would essentially subject every vehicle traveling on Interstate 80 to a search for narcotics. The United States and Illinois Constitutions do not give the police such unfettered and unreasonable access to the innocent activities of citizens or the unknown contents of people's vehicles.

¶ 24    Further, like the Interstate 80 "drug corridor" analysis, Combs's general belief that both Des Moines and Chicago were "hubs" of criminal activity provided no corroboration that Redmond was acting criminally in this case. Again, Combs's claim, taken to its logical conclusion, would essentially subject every resident of Des Moines and Chicago driving on Interstate 80 to vehicle searches based on some vague notion of them possibly engaging in

---

[1]We also note that the traffic violations for which Combs stopped Redmond—driving three miles per hour over the speed limit and an improperly secured license plate—were not indicative of impairment. See *Stribling*, 2022 IL App (3d) 210098, ¶ 28.

9

criminal activity. It is simply not reasonable to assume that any or all residents of Des Moines and Chicago are criminals.

¶ 25 Lastly, Redmond's answers to Combs's questions provided no corroboration of his suspicions in this case. Combs clearly misconstrued at least the answers Redmond provided regarding residency. Redmond told Combs he lived in Chicago but had been staying with a girlfriend in Des Moines due to COVID. Combs—and only Combs—decided this meant Redmond "lived" in Des Moines. Even if that construction had been correct, it is unclear why it would be suspicious. Moreover, any suspicion should have been quickly dispelled when Combs determined that Redmond in fact had a valid Illinois driver's license that listed a Chicago address.

¶ 26 As was the case in *Stribling*, no evidence existed in this case to lead a reasonable officer to conclude that there was a reasonable probability that Redmond's vehicle contained contraband or evidence of criminal activity giving rise to probable cause to search. See *id.* ¶ 28. Under the circumstances of this case, we hold that the circuit court did not err when it granted Redmond's motion to suppress.

¶ 27                                III. CONCLUSION

¶ 28 The judgment of the circuit court of Henry County is affirmed.

¶ 29 Affirmed.

*People v. Redmond*, 2022 IL App (3d) 210524

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Henry County, Nos. 20-CL-27, 20-TR-3348; the Hon. Daniel P. Dalton, Judge, presiding. |
| **Attorneys for Appellant:** | Catherine Runty, State's Attorney, of Cambridge (Patrick Delfino, Thomas D. Arado, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | Bruce L. Carmen, of Carmen Law Office, PC, of Cambridge, for appellee. |