2025 IL App (1st) 230523-U

THIRD DIVISION
May 28, 2025

No. 1-23-0523

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21 CR 15067 |
| | ) | |
| TYSON BURTON, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Charles P. Burns, |
| | ) | Judge, presiding. |
| | ) | |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held:* The weapon recovered from defendant's vehicle was the product of an unreasonable search and should have been suppressed. We reverse defendant's conviction outright.

¶ 2    Defendant Tyson Burton was arrested and charged with unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1 (West 2022)) after a traffic stop and subsequent search of his vehicle, during which a firearm was found. He claims that his motion to quash and suppress the firearm as evidence should have been granted because the search was unlawful. He also asserts

that his conviction for UPWF is a violation of his rights under the second amendment of the United States Constitution. For the reasons discussed below, we reverse defendant's conviction.

¶ 3                                    I. BACKGROUND

¶ 4    Prior to trial, defendant filed a motion to quash arrest and suppress evidence (MTQS), arguing that police lacked probable cause to ask defendant to step out of his vehicle or to search his vehicle, and therefore, the evidence discovered therein should be suppressed. At a hearing on the motion on June 7, 2022, testimony was heard from two of the three Chicago Police Department officers who performed the traffic stop and the search of defendant's vehicle.

¶ 5    Officer Alejandro Velez testified that he was driving an unmarked police vehicle westbound on 95th Street around 7:37 p.m. on November 4, 2021, when he saw a silver SUV cut through a parking lot. The SUV had one headlight and one taillight out, as well as a large crack in the windshield. Velez turned onto South Jeffery Boulevard to follow the SUV. Officer Velez activated his vehicle's overhead lights and pulled the SUV over.

¶ 6    Officer Velez, along with Officer Jose Romero and Officer Bennie Traylor, exited their vehicle and approached the SUV. Defendant, who was in the driver's seat of the SUV, rolled his window down and provided his license to Officer Velez. Officer Velez smelled the odor of burnt cannabis coming from the vehicle while speaking with defendant. Based on the fact that he smelled burnt cannabis and that defendant did not pull over for a full block, Officer Velez asked defendant to exit the vehicle and move to the rear of the vehicle. After moving defendant to the rear of the vehicle, a narcotics search of the vehicle was performed by Officers Romero and Traylor. During the search, a firearm was recovered.

¶ 7    On cross-examination, Officer Velez confirmed that he saw a "square black bag, zip-lock baggie" in the car and asked defendant "if he had cannabis in there at one point." Officer Velez did not specify whether the question had been if the baggie had, at some point, contained cannabis

2

or whether he asked, *at some point*, whether it currently contained cannabis. When prompted, Officer Velez confirmed that he had asked "if [the bag] had weed." As the opaque side of the bag was face-up, Officer Velez could not tell if the bag actually contained cannabis. While searching the vehicle, Officer Romero found a firearm. Officer Traylor located a satchel bag containing ammunition, as well as a partially burnt "blunt," which is a rolled cannabis cigar.

¶ 8    Officer Jose Romero's testimony comported with Officer Velez' account of events. Officer Romero stated that he recovered a bag containing a small amount of marijuana from the driver's side floorboard and a handgun from beneath the driver seat. Officer Romero described the time it took defendant to stop after Officer Velez activated the overhead lights as "a few seconds. About a block."

¶ 9    The court was shown footage from Officers Velez and Romero's body-worn cameras just before and during the traffic stop. That footage shows that the officers' vehicle began to slow and pull over behind defendant's vehicle eight seconds after the overhead lights were activated, and the officers' vehicle came to a complete stop sixteen seconds after the lights were activated. Officer Velez asked defendant whether he had any weed in the car, and defendant said that he did not. Officer Velez asked defendant to exit the vehicle and, while defendant was being cuffed, Officer Velez asked him "what do you normally keep in that bag right there?" indicating the bag on the floorboard subsequently recovered by Romero. Defendant did not respond at that time. Immediately afterward the following exchange occurred:

> Officer: Velez: "You see that bag right there? That's a weed bag,
>
> correct?"
>
> Defendant: "Yeah."
>
> Officer Velez: "You got any weed in the car?"
>
> Defendant: "No, sir."

¶ 10    Officer Romero's body-worn camera shows that at the moment when Officer Velez asked about the bag, Officer Traylor had already opened the passenger side door and was leaned inside the vehicle conducting a search with his flashlight. Officer Romero had not yet begun to search the vehicle. The "weed bag," which is the same partially opaque plastic bag previously mentioned, was clearly visible on the floorboard of defendant's vehicle after the driver's side door was opened for him to step out. Officer Romero began to search the car immediately after the above exchange. Throughout the duration of the stop and arrest, defendant was asked multiple times whether he had a concealed carry license (CCL) or a firearm owners identification card (FOID card). Defendant replied each time that he did not. At no time during the video did defendant state that he possessed cannabis either on his person or that there was cannabis in his vehicle.

¶ 11    The State argued at the hearing that the officers could ask defendant to exit the car at any time during the traffic stop under *Pennsylvania v. Mims*, 434 U.S. 106 (1977). The State asserted that the officer smelled burnt cannabis and saw "narcotics packaging on the ground [*sic*]," and therefore, the officers had probable cause to search the vehicle. Defendant argued that the smell of burnt cannabis alone is insufficient to establish probable cause. Additionally, Officer Traylor had already opened the passenger side door and begun to search when the "narcotics bag" was identified. The court found that the time it took for defendant to pull over was irrelevant and that both questioning and having defendant step out of the car were justified by the valid traffic stop. The court stated that defendant said that "there was a little bit of weed inside the car," and that that admission and the odor of cannabis justified the search. Defendant filed a motion to reconsider, which was denied. Defendant later filed a second motion to reconsider based on this court's ruling in *People v. Stribling*, 2022 IL App (3d) 210098, which held that the odor of burnt cannabis, alone, was insufficient to establish probable cause. The circuit court denied that motion

4

to reconsider as well, relying on its belief that defendant admitted to having cannabis in the vehicle prior to the search.

¶ 12 Defendant's first jury trial resulted in a hung jury and a mistrial was declared. Defendant was retried January 9, 2023. At his second trial, only Officer Romero and an evidence technician testified. The parties stipulated as to the qualifications of a fingerprint expert and that said expert would testify that no fingerprint could be recovered from the handgun that was suitable for comparison and identification. The parties also stipulated that defendant had a previous felony conviction on his record. The jury returned a conviction on the UPWF charge. On March 9, 2023, the court sentenced defendant to 30 months' incarceration with the Illinois Department of Corrections. Defendant filed a notice of appeal the same day. This timely appeal follows.

¶ 13                                    II. ANALYSIS

¶ 14 Defendant asks that we outright reverse his conviction because the officers who searched his vehicle lacked probable cause when they began the search, and the firearm that is absolutely necessary to establish defendant's guilt was discovered during that illegal search. Defendant also argues that his conviction should be reversed because the UPWF statute is unconstitutional both facially and as applied to him. Although we do not find the UPWF statute to be unconstitutional, we agree that the officers searching defendant's car lacked probable cause, and for that reason, we reverse defendant's conviction.

¶ 15                              A. Fourth Amendment Claim

¶ 16 On appeal, defendant does not renew his challenge to Officer Velez' order to step out of the vehicle. Defendant argues only that his fourth amendment right to not be subject to unreasonable searches was violated when his vehicle was searched without probable cause. The State argues that the officers had probable cause to search defendant's vehicle based on the totality of the circumstances. The State further argues that, should we determine that the officers lacked

5

probable cause to search the vehicle, we should nonetheless affirm the trial court's decision based on the good faith exception to the exclusionary rule.

¶ 17    The fourth amendment to the United States Constitution provides protection against unreasonable searches. U.S. Const., amend. IV. That protection is extended to the states through the fourteenth amendment and reiterated by the Illinois Constitution in lockstep. U.S. Const. amend., XIV; Ill. Const. 1970, art. I, § 6. The Supreme Court has held that any warrantless search is *per se* unreasonable except where certain exceptions apply. *Katz v. United States*, 389 U.S. 347, 357 (1967). Included in the recognized exceptions is the automobile exception, which allows for warrantless searches of vehicles due to their mobile nature. *California v. Acevedo*, 500 U.S. 565, 569 (1991). Although warrantless searches of vehicles are permitted, the officer conducting the search must still have probable cause to conduct the search. *Carroll v. United States*, 267 U.S. 132, 154 (1925); *People v. Redmond*, 2024 IL 129201, ¶ 24.

¶ 18    "To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 23. "It is a pragmatic, nontechnical analysis of 'everyday life on which reasonable and prudent persons—not legal technicians—act.' " *Id*. (citing *People v. Jones*, 215 Ill. 261, 274 (2005)). "Probable cause deals with probabilities, not certainties." *Hill*, 2020 IL 124595, ¶ 24. "[I]t requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a reasonable man to believe there is a reasonable probability 'that certain items may be contraband or stolen property or useful as evidence of a crime.' " *Id*. (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)). Supreme Court jurisprudence has established the exclusionary rule, a deterrent measure that "bars the prosecution from introducing evidence obtained by way of a fourth amendment violation" in order to deter further violations. *People v.*

6

*Manzo*, 2018 IL 122761, ¶ 62. The standard of review on motions to suppress is a two-part standard under which the trial court's factual findings will only be reversed if they are against the manifest weight of the evidence, but the ultimate ruling on the motion to suppress is subject to *de novo* review. *Hill*, 2020 IL 124595, ¶ 14.

¶ 19    The timing of this case and appeal complicate the question of what case law controlled at the time of the trial court's decision. The hearing on the motion to suppress was held June 7, 2022. On September 19, 2022, *Stribling* was decided by this court in the Third District. *People v. Stribling*, 2022 IL App (3d) 210098. Defendant filed a motion to reconsider the court's decision on the motion to suppress in light of *Stribling* on September 21, 2022. The trial court denied the motion, opining that a Third District case was not binding in the First District. Jury selection and trial commenced over the following two days. A mistrial resulted and defendant was retried January 9, 2023. Defendant was found guilty and sentenced on March 9, 2023. This appeal was initiated the same day. Our supreme court has clarified in a decision on September 19, 2024, that the odor of burnt cannabis, alone, did not constitute probable cause to search a vehicle. *People v. Redmond*, 2024 IL 129201.

¶ 20    The trial court erred in disregarding *Stribling*, because while we have five appellate districts for election purposes, "Illinois has but one unitary appellate court." *People v. Ortiz*, 196 Ill. 2d 236, 255 (2001). Where there are conflicting decisions in the appellate jurisprudence, "the circuit court may choose between the conflicting decisions." *People v. Cruz Aguilar*, 2024 IL App (5th) 220651, ¶ 13. However, the circuit court made no such choice here, as *Stribling* was, at the time, the only unambiguous appellate decision on the matter, having been decided only days earlier. That said, the controlling precedent in our analysis is *Redmond*, which was decided while this appeal was pending. That case dictates our probable cause analysis despite postdating the search because "[i]t is well established that judicial opinions announcing new constitutional rules

applicable to criminal cases are retroactive to those cases pending on direct review at the time the new rule is announced." *People v. Hauschild*, 226 Ill. 2d 63, 77 (2007).

¶ 21     *Redmond* unequivocally held that "[t]he laws on cannabis have changed in such a drastic way as to render the smell of burnt cannabis, standing alone, insufficient to provide probable cause for a police officer to search a vehicle without a warrant." *People v. Redmond*, 2024 IL 129201, ¶ 46. As the State asserts, the facts before us do not present an instance in which the odor of burnt cannabis stands alone. Rather, the State asserted below that the time that defendant's vehicle took to pull over, the plastic baggie spotted on the floorboard of the vehicle, and defendant's admission that there was cannabis in the vehicle were corroborating factors justifying the search. The circuit court found that the time the vehicle took to pull over was not suspicious and was "irrelevant." As the time between the activation of the officers' blue lights and the vehicle beginning to brake and pull over was only eight seconds, we cannot say that finding is against the manifest weight of the evidence. We therefore defer to the circuit court's finding on that matter.

¶ 22     Although the circuit court made no finding regarding the baggie on the floorboard and did not explicitly base its decision on that baggie, the assertion that a plastic bag is evidence of contraband relies on a pre-legalization framework just as much as reliance on the odor of burnt cannabis. A plastic bag may contain any number of things or nothing at all. If it were observed to contain cannabis and not be a sealable variety of bag, that could indicate a violation of the statutory requirement under section 11-502.15 of the Illinois Vehicle Code that cannabis be kept in a sealed, odor-proof container. 625 ILCS 5/11-502.15 (West 2020). In this case, however, that is not the claim made by the officers who testified, nor was cannabis visible in the container. Our caselaw that preceded the changes in the law surrounding cannabis supports the conclusion that the presence of a plastic bag can be relevant to a totality of the circumstances probable cause analysis. However, that relevance depends on the existence of other indicia that clearly suggest the purpose

of the bag. For instance, in *People v. Jackson*, the defendant made statements to an officer suggesting both that he consumed cannabis and was aware that plastic bags were used for parceling out cannabis for sale, and officers saw both a partially burnt cigarette in the vehicle's ashtray and a box of plastic bags in the vehicle's glove compartment. *People v. Jackson*, 331 Ill. App. 3d 158, 163 (2002). There is no such robust body of circumstantial evidence suggesting illegal contraband here and so we see no reason that the mere sight of this bag, in combination with the odor of burnt cannabis, would lead a reasonable person to anticipate the presence of contraband in the vehicle under the current legal framework regarding the legal sale of cannabis.

¶ 23    That analysis changes, however, at the point when defendant confirms that the bag on the floorboard of the vehicle is a "weed bag," and even more so if and when he admits that he has weed in the vehicle. Once those admissions have been made, if the bag appeared to be a non-sealing bag that was not odor proof, an officer would have probable cause to search the vehicle, both to ascertain whether the cannabis was stored in compliance with the statutory requirements and to check for any additional cannabis that might be improperly stored. Here, we must turn to the testimony of the officers on the scene and the footage captured by their body-worn cameras.

¶ 24    First, we note that the testimony of the officers was inconsistent between defendant's first and second trials. We find it concerning that the testimony regarding which officers found and recovered certain pieces of evidence changed in the span of six months, even where there was video evidence to the contrary. It is further concerning that the testimony of the officers contradicts the body-worn camera footage. Officer Velez testified that he asked defendant "at some point" whether the bag on the floorboard contained cannabis and defendant confirmed that it did. The body-worn cameras of Officers Velez and Romero, however, reflect that after defendant stepped out of the vehicle and was being handcuffed, he was asked if the bag was a "weed bag," which he confirmed. Then, he was asked if he had any weed in the car, to which defendant replied, "No,

9

sir." At no time did defendant state that he had cannabis, weed, or any other such synonym for marijuana, in the vehicle.

¶ 25    Regardless of any of those details, Officer Romero's body-worn camera shows that before defendant was asked about the baggie, Officer Traylor had already opened the passenger side door and begun to search under and around the passenger seat. Accordingly, the *only* indicia available to Officers Velez and Romero at the time the search began were the time the vehicle took to stop, which was non-suspicious, the odor of burnt cannabis, and the presence of a plastic bag. As there was no testimony from Officer Traylor at trial and no body-worn camera footage from Officer Traylor, there is no indication in the record that Officer Traylor was aware of *any* of this. Did Officer Traylor notice how long it took the vehicle to stop? Did Officer Traylor notice the odor of burnt cannabis or see the bag on the floor? We do not know. While there are cases establishing that the knowledge possessed by any officer can be imputed to other officers with whom he is working in concert, those cases concern instances where an officer is directed to place an individual under arrest based on the fruits of other officers' investigation. *People v. Buss*, 187 Ill. 2d 144 (1999); *People v. Bascom*, 286 Ill. App. 3d 124, 127 (1997). That is not the case here. There is no indication in the record, either in testimony or in the video, that Officer Traylor was instructed by *anyone* to begin the search, and even if he were, the only information available to any of the officers at that time was insufficient to constitute probable cause to search the vehicle.

¶ 26    The State urges us to follow our previous holding that "an officer's belief that a warrantless search is permissible is objectively reasonable if, among other reasons, it was supported at the time by 'binding appellate precedent' that was later overruled or limited." *People v. Potts*, 2021 IL App (1st) 161219, ¶ 114 (citing *Davis v. U.S.*, 564 U.S. 229, 232 (2011); *People v. LeFlore*, 2015 IL 116799, ¶ 27). The binding precedent to which the State refers was the bedrock case establishing that the odor of burnt cannabis was sufficient to establish probable cause for a vehicle search prior

to changes in cannabis law. *People v. Stout*, 106 Ill. 2d 77 (1985). We cannot agree that a law enforcement officer who interfaces with the law every day would reasonably rely on a case from 1985, when cannabis was outright illegal in every context, to determine what indicates the presence of contraband after a sea change in the relevant statutes. We believe it sensible to assume that the officers were aware of the change in the cannabis statute and capable of making the reasonable and logical deductions necessary to overcome long habit and make a probable cause determination in line with the new legal landscape. As such, we see no justification here for a good faith exception. The evidence recovered as a result of this unreasonable search should have been suppressed. We believe this case an especially appropriate one in which to invoke the exclusionary rule, as the officers either were not concerned with probable cause or thought it established based upon precedent that a moment's thought would show to be inapplicable. We need not examine defendant's Second Amendment arguments, as we reverse based upon the above.

¶ 27                                III. CONCLUSION

¶ 28    For the above reasons, we reverse defendant's conviction outright. Without the firearm recovered from the unreasonable search, there is no way for the State to prove the necessary element that defendant possessed a firearm. Therefore, were a new trial granted, there would be no way for the State to make a case to convict defendant on that charge.

¶ 29    Reversed.