2022 IL App (1st) 192483-U

No. 1-19-2483

Order filed October 11, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 797 |
| | ) | |
| DANIEL GUTIERREZ, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's trial counsel did not provide ineffective assistance by failing to file a motion to suppress evidence where the motion would not have succeeded, because the police officers had probable cause to search his vehicle.

¶ 2    Following a bench trial, defendant Daniel Gutierrez was found guilty of armed habitual criminal and sentenced to 12 years in prison for armed habitual criminal. On appeal, he argues trial counsel provided ineffective assistance by failing to file a motion to suppress the evidence obtained from a warrantless search of his vehicle. We affirm.

¶ 3    Defendant was charged by indictment with one count of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2018)), two counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2018)), and four counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2018)), premised on an incident in Chicago on December 15, 2018.

¶ 4    At trial, Chicago police officer Hasan testified that on December 15, 2018, at about 12:32 p.m., he and his partner Officer Nikolo Martino were wearing plain clothes while on patrol in an unmarked vehicle on the 2400 block of West 47th Place.[1] As Hasan drove the vehicle southbound, he observed a sedan with a "shattered" front windshield driving northbound at the intersection of Western Avenue and 48th Street. Hasan made a U-turn to conduct a traffic stop based on the shattered windshield violation and activated his vehicle's emergency equipment. The sedan pulled over. Defendant, who was the sole occupant, exited the sedan and walked away "like it wasn't his vehicle."

¶ 5    Once Hasan and Martino exited their vehicle, defendant attempted to flee on foot and was detained. While still on the scene, defendant initially told the officers he had attempted to run because there were "multiple warrants out for his arrest." The officers asked defendant if there were any firearms in the vehicle, and defendant responded that there was one under the driver's seat. Hasan went to the sedan and recovered a firearm under the driver's seat. The firearm was a .45-caliber handgun with six live rounds in the magazine. The firearm was inventoried, and defendant was transported to the police station.

---

[1] The first name of Officer Hasan does not appear in the transcript of the trial proceedings or the record.

¶ 6     At the station, defendant was *Mirandized* and spoke with Hasan and Martino. Initially, defendant offered to get the officers more firearms if they would release him. He then stated he fled because he had warrants out for his arrest and a firearm in the vehicle.

¶ 7     The State published without objection the video footage from Hasan's body-worn camera for the court, and the parties stipulated that the footage was true and accurate at the time it was recorded.

¶ 8     The video shows, in relevant part, the officers walking defendant toward the police vehicle. Hasan asks defendant if there is anything inside his vehicle. Defendant replies, "No." When they reach the front of the police vehicle, Hasan asks, "Is there a pull in there?"[2] Defendant responds, "Yeah." Eventually, Hasan is seen walking to a sedan, which is about one or two car lengths down from the police vehicle. He opens the driver's side door, and appears to bend forward. Hasan is then seen holding a gun, removing the magazine, and clearing the gun. Hasan returns to the police vehicle and asks defendant for his identification. Defendant responds that he does not have any.

¶ 9     On cross-examination, Hasan testified that defendant made eye contact with him as he drove past the officers in the opposite direction. The sedan's windshield was "completely shattered," so it was not safe for operation. Once defendant was in custody, Hasan performed a protective pat down because defendant had fled from the officers. Hasan found nothing on defendant's person. Before the officers asked defendant any questions, they had not yet identified defendant, and he could not recall whether defendant had any identification on his person.

---

[2] Hasan testified that "[a] pull is usually a reference on the street for a gun or a firearm."

¶ 10   On redirect examination, Hasan confirmed that he "ultimately" ran a "name-check" on defendant and learned his driver's license privileges were revoked when he was operating the sedan. Defendant had two outstanding, serviceable warrants at the time of his arrest.

¶ 11   Martino largely testified consistently with Hasan regarding the incident. He testified that defendant told the officers he "had warrants and that he had a pull under his seat." Martino additionally testified that during the interview at the police station, defendant stated he had "owned [the firearm] for a minute."

¶ 12   The State also published without objection the video footage from Martino's body-worn camera from the incident scene for the court, and the parties stipulated that it was a true and accurate depiction. The video shows, in relevant part, Martino exiting the police vehicle and chasing defendant, who is running on the sidewalk. Defendant stops, and Martino handcuffs him. The officers are heard instructing defendant to sit down. Defendant paces, says "please," and states he has a "warrant out" for him. Martino asks what defendant has on him, and defendant responds that he has "nothing." Martino asks defendant for his identification. Defendant tells the officers "there's nothing in the car." The officers then walk defendant to the front of the police vehicle. When asked what he is doing in the area, defendant replies, "I was trying to fix my window." Defendant states he has a pistol because of "all this s*** that's going on," and he has "two or three" warrants for his arrest.

¶ 13   On cross-examination, Martino testified that the officers stopped defendant because "[p]retty much the majority" of the sedan's front windshield was cracked. After defendant was "detained in relation to the traffic offense," the officers checked whether defendant could possess a firearm in his vehicle.

¶ 14    The State entered into evidence defendant's two prior convictions of aggravated robbery (case numbers 10 CR 18413 and 10 CR 14949).

¶ 15    Defendant moved for a directed finding as to his four AUUW counts, which charged him with carrying a firearm without a firearm owner's identification (FOID) card or concealed carry license (CCL) at the time of the offense. Defendant argued the State presented no evidence that he did not have a FOID card or CCL on his person or whether he was eligible to have them. The trial court granted the motion and acquitted defendant of the four AUUW counts.

¶ 16    In closing arguments, defendant's trial counsel argued, in relevant part, that "even though there is no motion pending *** the search and seizure of the vehicle was under questionable circumstances." The State argued in rebuttal that defendant's actions indicated a "consciousness of guilt," as defendant fled on foot after parking his vehicle. The State referenced the body-worn camera video, noting defendant could be heard pleading with the officers and confirmed that he had a "pull in the car."

¶ 17    At the close of arguments, the court asked whether "[e]ither side" was familiar with any case law concerning the defense's attempt to raise a Fourth Amendment issue "in the middle of a bench trial." No response was made, and the trial court stated it was "going to treat it as a bench trial then." The trial court then found defendant guilty of armed habitual criminal and both counts of UUWF because the State proved defendant possessed a firearm beyond a reasonable doubt.

¶ 18    Defendant filed a posttrial motion arguing the State failed to prove him guilty beyond a reasonable doubt, as the State only relied on the testimony of two police officers and presented no

physical evidence. The court denied the motion. It merged the UUWF counts into the armed habitual criminal count and sentenced defendant to 12 years in prison on that count.[3]

¶ 19 On appeal, defendant argues that his trial counsel provided ineffective assistance by failing to file a motion to suppress the firearm recovered from the illegal search of his vehicle. He asserts a motion to suppress the firearm would have been meritorious because the officers lacked probable cause to search the vehicle.

¶ 20 The sixth amendment to the United States Constitution (U.S. Const., amend. VI) guarantees those accused of crime the right to the effective assistance of counsel. *People v. Cole*, 2017 IL 120997, ¶ 22. To prevail on an ineffective assistance of counsel claim, a defendant must establish that (1) "counsel's performance was objectively unreasonable under prevailing professional norms," and (2) "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 21 To satisfy the deficiency prong, the defendant must show that counsel's performance was so deficient that counsel "was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Easley*, 192 Ill. 2d 307, 317 (2000). In doing so, "the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *Id.* To establish prejudice resulting from trial counsel's alleged failure to file a suppression motion, "the defendant must demonstrate that the unargued

---

[3] We note that, although the sentencing order reflects 12-year sentences for each UUWF count, it states those counts merged into the armed habitual criminal count, which accords with the trial court's oral pronouncement at sentencing that the counts merged. See *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87 ("When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls." (Internal quotation marks omitted.)).

suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15.

¶ 22 Because a defendant must satisfy both prongs of the *Strickland* test (*People v. Jackson*, 2020 IL 124112, ¶ 90), we may resolve an ineffective assistance claim based on the prejudice prong without considering whether counsel's performance was deficient (*People v. Pulliam*, 206 Ill. 2d 218, 249 (2002)). Proceeding directly to the prejudice prong, we find defendant has not established he was prejudiced by counsel's failure to file a motion to suppress challenging the search of the vehicle, as the motion would not have been meritorious.

¶ 23 As an initial matter, defendant concedes that the police officers executed a valid traffic stop, based on their observations of defendant operating a vehicle with a shattered front windshield. See 625 ILCS 5/12-503I (West 2018) ("No person shall drive a motor vehicle when the windshield *** [is] in such defective condition or repair as to materially impair the driver's view."). Rather, the issue on appeal is limited to whether the officers had probable cause to search defendant's vehicle.

¶ 24 The fourth amendment of the United States Constitution and the Illinois Constitution guarantee the "right of individuals to be free from unreasonable searches and seizures." *People v. Colyar*, 2013 IL 111835, ¶ 31 (citing U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6). "Reasonableness under the fourth amendment generally requires a warrant supported by probable cause." *People v. Flowers*, 179 Ill. 2d 257, 262 (1997). Under the "fruit of the poisonous tree" doctrine, any evidence obtained by exploiting a fourth amendment violation "is subject to suppression as the 'fruit' of that poisonous tree." *Henderson*, 2013 IL 114040, ¶ 33.

¶ 25    One exception to the fourth amendment's warrant requirement is the " 'automobile exception,' which is based on the understanding that automobiles may be readily driven away often rendering it impossible for officers to obtain warrants for their search." *People v. Contreras*, 2014 IL App (1st) 131889, ¶ 28. Under this exception, "law enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312 (1994). Once an officer possesses facts supporting probable cause to believe that a vehicle contains contraband, the officer may search the vehicle without a warrant, and "the search area includes any interior compartment of the vehicle that might reasonably contain the contraband." *Contreras*, 2014 IL App (1st) 131889, ¶ 28.

¶ 26    "To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 23. Probable cause does not require evidence that will sustain a conviction, but more than "mere suspicion" is necessary. *People v. Kidd*, 175 Ill. 2d 1, 22 (1996). The determination is governed by "commonsense, practical considerations, and not by technical legal rules." *People v. Sims*, 192 Ill. 2d 592, 615 (2000). The defendant bears the burden of establishing the illegality of a challenged search. *Kidd*, 175 Ill. 2d at 22. We review *de novo* a claim that defendant's trial counsel provided ineffective assistance by failing to file a pretrial motion to suppress. *People v. Wilson*, 2020 IL App (1st) 170443, ¶ 26.

¶ 27    In this case, a reasonable person would be justified in believing that the sedan contained "contraband or evidence of criminal activity" based on "the totality of the facts and circumstances

known to the officer at the time of the search." *Hill*, 2020 IL 124595, ¶ 23. The evidence showed that the officers curbed defendant's sedan because his windshield was "completely shattered." When the police vehicle approached with its emergency lights activated, defendant walked away "like it wasn't his vehicle," then ran when the officers exited their vehicle. Once detained for the traffic stop, defendant explained he fled because there were multiple warrants for his arrest. Defendant initially denied possession of a firearm but then admitted a "pull" was underneath the driver's seat of the sedan that the officers observed him driving and fleeing from.

¶ 28   Defendant's statement that there was a firearm in the vehicle, taken with his initial false exculpatory statement, his suspicious conduct in distancing himself from the sedan and fleeing from police, and his admission that he was subject to multiple warrants for his arrest, provided the officers with probable cause to search the sedan under the automobile exception. See *People v. Hardaway*, 307 Ill. App. 3d 592, 604 (1999) ("false exculpatory statements" are relevant to a determination of probable cause). The officers were entitled to draw upon not only commonsense and practical considerations in determining whether the sedan "contained contraband or evidence of criminal activity," but also "rely on their law-enforcement training and experience to make inferences that might evade an untrained civilian." *Hill*, 2020 IL 124595, ¶ 23.

¶ 29   Citing *People v. Bloxton*, 2020 IL App (1st) 181216, defendant correctly notes that because mere possession of a firearm outside the home no longer necessarily amounts to criminal conduct, possessing a firearm does not automatically provide probable cause to arrest in every instance. See *id.* ¶ 19; see also *People v. Aguilar*, 2013 IL 112116. However, unlike the question underlying defendant's argument in the case at bar, *Bloxton* did not concern whether officers had probable cause to search a vehicle pursuant to the automobile exception. Rather, the issue in *Bloxton* was

whether police had probable cause to arrest the defendant based on his possession of a firearm when they did not know at the time whether he was legally permitted to carry it. *Bloxton*, 2020 IL App (1st) 181216, ¶ 12. Defendant here does not challenge his arrest at the scene; only the constitutionality of the officers' search of his vehicle following his arrest for the traffic violation.

¶ 30 Further, putting aside the fact that a vehicle search rather than an arrest is at issue in the instant appeal, in *Bloxton* the arresting officer only made eye contact with the defendant, saw "what he thought was a gun" in the defendant's pocket, and then observed the defendant walk away before handcuffing him, recovering a gun from him, and arresting him. *Id.* ¶ 21. This court reversed defendant's conviction outright, concluding the officer had no basis to arrest the defendant as the officer had no reason to believe that the defendant was or had engaged in criminal activity when he merely possessed a firearm but did not engage in any suspicious behavior. *Id.* ¶¶ 22, 31. Unlike in *Bloxton*, the officers' search of defendant's sedan *was* based on defendant's overall suspicious behavior, not on his "mere possession" of a firearm. Defendant attempted to flee from police, stated he had "multiple warrants for his arrest," and made a false exculpatory statement before admitting there was a firearm in the vehicle he was driving, providing probable cause to search his vehicle.

¶ 31 Moreover, a probable cause determination "does not require an officer to rule out any innocent explanations for suspicious facts." *Hill*, 2020 IL 124595, ¶ 24. The officers therefore were not required to verify that defendant did not have a FOID card prior to searching the sedan, as their belief that defendant did not lawfully possess the firearm was justified from the standpoint of an objectively reasonable officer. See *People v. Lawrence*, 2018 IL App (1st) 161267, ¶¶ 42-44 (police officers had probable cause to believe the defendant illegally possessed his firearm and

were not required to verify his lack of a FOID card, where the defendant made false exculpatory statements regarding the possession).

¶ 32    Here, the record supports the officers' search of the sedan under the automobile exception because the officers had probable cause to believe the sedan contained "contraband or evidence of criminal activity." Therefore, there is no reasonable probability the court would have granted the motion to suppress and the filing of any such motion would have been futile. See *People v. Patterson*, 217 Ill. 2d 407, 438 (2005) (the first determination in an ineffective assistance of counsel claim for failure to file a motion to suppress is whether the court would have granted the motion). "The failure to file a motion to suppress does not establish incompetent representation when the motion would have been futile." *Id.* It necessarily follows that counsel's failure to move to suppress the firearm did not prejudice defendant. *Id.* at 440; see *Henderson*, 2013 IL 114040, ¶ 15 (to establish prejudice based on counsel's failure to file a motion to suppress, the defendant must show the suppression motion is meritorious). Accordingly, we reject defendant's ineffective assistance of counsel claim because he failed to carry his burden to establish the prejudice prong of the *Strickland* test. See *People v. Marshall*, 375 Ill. App. 3d 670, (2007) (defendant bears the burden of affirmatively showing prejudice). Because we have rejected defendant's ineffective assistance claim based on the prejudice prong, we need not address whether counsel's performance was deficient. *Henderson*, 2013 IL 114040, ¶ 11 (failure to establish either *Strickland* prong precludes a finding of ineffective assistance of counsel).

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 34    Affirmed.