2023 IL App (1st) 220425 -U

No. 1-22-0425

Order filed June 30, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 14882 |
| | ) | |
| LUIS TORRES, | ) | Honorable |
| | ) | Thomas J. Byme, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Oden Johnson and Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying defendant's motion to quash arrest and suppress evidence where the search of the vehicle driven by defendant was conducted after the officer observed an ammunition clip in plain view and defendant admitted there was an ammunition clip in the vehicle. Defendant's conviction of aggravated unlawful use of a weapon is affirmed.

¶ 2    Following a bench trial, defendant Luis Torres was convicted of four counts of aggravated

unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1)/(3)(c) (West 2016)) and sentenced

to a term of six months in prison and 24 months of probation. He appeals, arguing that the trial

court erred by denying the motion to suppress the firearm and ammunition recovered during a warrantless search of his vehicle and that the arresting officers seized him in an unreasonable manner. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On December 1, 2017, around 9: 52 p.m., Torres was arrested and charged with four counts of AUUW. Torres filed a motion to quash arrest and suppress evidence seized in his arrest. The motion alleged that officers violated his fourth amendment rights because there was no probable cause to support a warrantless search of his vehicle. Torres further alleged that even if probable cause did exist, the search violated his fourth amendment rights because it was: (1) outside the scope of the area within his immediate control at the time of his arrest; (2) not substantially contemporaneous with the arrest; and (3) conducted without his consent.

¶ 5    Officer Marco Delatorre testified at the suppression hearing that he and Officer Daniel Ellison were on a "routine aggressive patrol." Delatorre explained that an aggressive patrol entailed patrolling a high-crime area. The officers witnessed Torres driving in a maroon-colored Ford and turning right without signaling. The officers followed Torres and ran the license plates through the LEADS system. LEADS revealed that the license plates did not match the Ford, so the officers decided to stop the vehicle as Torres was "zooming" through traffic. The officers stopped the vehicle in the middle lane at the intersection of 31st and Wentworth in Chicago, Illinois. Officer Delatorre ordered Torres out of the vehicle and handcuffed him but did not remember if he had his gun drawn. After apprehending Torres and placing him in the back of the police squad car, Officer Delatorre moved the vehicle to Ferro's Italian Beef parking lot across the street because Torres's vehicle was impeding traffic.

¶ 6    After parking the vehicle, Officer Delatorre intended to conduct an inventory search of the vehicle. Officer Delatorre did not receive permission from Torres to search the car and did not have a search warrant. When Officer Delatorre opened the door to exit the vehicle, he discovered an ammunition clip on the driver-side door panel in plain view. Officer Delatorre relayed to Officer Ellison he found an ammunition clip. Officer Ellison assisted Officer Delatorre with the search after Torres admitted there was a "clip" in the vehicle, and they recovered a nine-millimeter handgun with a bullet loaded in the chamber from the front passenger floorboard.

¶ 7    Defense counsel argued that Delatorre's conduct violated Torres's fourth amendment rights pursuant to *Arizona v. Gant*, 566 U.S. 332 (2009), and that there was not sufficient evidence to find that the search performed by Delatorre was an inventory search. Defense counsel further argued that the safety exception did not apply because Torres was in the patrol car at the time of the search. Defense counsel further argued that the trial court should suppress Torres's statements because officers did not read him his Miranda rights before asking if he had any weapons.

¶ 8    In response, the State argued that Officer Delatorre's search began as an inventory search because the car would be impounded based on the unmatching plates being an impoundable offense. The State also claimed that Torres's furtive movements when the officers approached him, and the discovery of the clip made it reasonable for officers to fear for their safety and search the vehicle.

¶ 9    The trial court denied the motion to suppress. In making its ruling, the trial court found that the evidence demonstrated that Torres was stopped and arrested based on the plates not matching the car. The trial court also found that Officer Delatorre was clear that the vehicle would be impounded, and that an inventory search would have been done prior to the vehicle being impounded. The court determined that the officers finding the ammunition clip indicated that there

could still be a chambered round inside of a weapon in the car, which would pose a risk to the officers and nearby citizens. The trial court went on to state:

"The fact that they were conducting or initially began an inventory search and they were searching for that second half of the gun is imminently reasonably because until they can determine whether or not there was a second half of a gun in the car or on the defendant's person, nobody's safety is assured, so that certainly was reasonable on the part of the officer to determine whether or not the weapon was in the vicinity of the clip that was recovered before moving on with the arrest and inventory and impoundment of the vehicle.

On direct examination and redirect examination, the officer said hearing about the clip changed the nature of the search. There's no question that that would have changed the nature in some regard because safety has to be the first order of business in a situation where there is at least half of a weapon that's recovered, the second half unaccounted for. I don't find that to be at all unreasonable and prudent on the part of the officer to follow up with that weapon as searched for any possible weapon under the circumstances."

¶ 10    At the bench trial, Officer Ellison testified to the events that occurred on the night of the arrest. Officer Ellison testified that prior to stopping Torres, he observed Torres make furtive movements and dip his right shoulder, which led him to believe he was trying to conceal something. After detaining Torres, Officer Ellison escorted him to the back of the patrol car. As Officer Ellison was escorting Torres, he believed Torres was trying to conceal something based on his movements. Ellison performed a pat down of Torres and asked him if he was concealing anything. Torres responded he did not have anything on him. Ellison testified that Torres informed

him there was a "clip" in the car. Ellison then assisted Delatorre with searching the vehicle, where he recovered a loaded nine-millimeter handgun on the passenger side floorboard. Ellison subsequently put the firearm in a gun case and Mirandized Torres. Ellison testified that after Mirandizing Torres, he admitted that he had recently purchased the vehicle. Ellison also testified that at the police station, Torres admitted to not owning a Firearm Owner's Identification (FOID) card or concealed carry (CCL) license.

¶ 11    At trial, Officer Delatorre's testimony largely mirrored his testimony at the motion to suppress hearing. Officer Delatorre identified Torres as the driver of the stopped vehicle and claimed he saw Torres dip his right shoulder to try and conceal something. Officer Delatorre testified that the clip and the handgun were within Torres's reach while Torres was in his own vehicle. Officer Delatorre also testified that the handgun and clip were submitted for fingerprint analysis, but he never received a report.

¶ 12    The parties stipulated that if called to testify, an Illinois police officer would testify that Torres did not have a valid FOID or CCL card. The parties also stipulated that the handgun, magazine, and 13 bullets were examined for ridge impressions. The bodycam footage of Officer Ellison was admitted into evidence. The defense made a motion for a directed finding which the trial court denied.

¶ 13    The court found Torres guilty on all counts. In making its ruling, the court found that the officers testified credibly. Specifically, the court found:

"As far as the issue regarding the Grand Jury testimony by Officer Delatorre, Counsel argues that under the glove compartment was, in fact, his words. And, in fact, it was the question that he answered, yes, rather than using those words, it's a matter of semantics as the officer explained the gun was on the floorboard;

however, looking at the facts actually as they actually were, his partner Officer Ellison ended up recovering the gun and he described it. And he described it in the manner in which he wasn't impeached I think in any regard or in any way that could be taken as inconsistent testimony from what was taken and what was said before the Grand Jury."

¶ 14    Torres filed a motion for a new trial, which the court denied. Torres was sentenced to 24 months of probation and six months in The Illinois Department of Corrections, which the court considered time already served. This is a direct appeal of the trial court's judgment.

¶ 15                                II. JURISDICTION

¶ 16    Torres was sentenced on March 10, 2022, and filed a timely notice of appeal on March 21, 2022. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art VI, § 6), and Supreme Court Rules 603 and 606, governing appeals from final judgments of conviction in criminal cases (Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. Mar. 12, 2021)).

¶ 17                                III. ANALYSIS

¶ 18    On appeal, Torres argues that the trial court erred when it denied his motion to suppress evidence. Specifically, he argues that the search was unlawful because it was not a valid inventory search and did not qualify for any warrant exceptions. The State responds that the evidence was admissible pursuant to the inevitable discovery exception. The State also argues that the officers had probable cause to search Torres's vehicle for evidence related to the fictitious license plate offense.

¶ 19    A defendant bears the burden of proof at a hearing on a motion to suppress. *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). The defendant must also make a *prima facie* case that the

evidence was obtained by an illegal search or seizure, then the burden shifts to the State to come forward with evidence to rebut. *People v. Bass*, 2021 IL 125434, ¶ 21. When reviewing a trial court's ruling on a motion to suppress evidence, a reviewing court applies the two-part standard of review announced by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657 (1996). *People v. Lindsey*, 2020 IL 124289, ¶ 14. First, "the trial court's findings of historical fact are reviewed for clear error and may be rejected only if they are against the manifest weight of the evidence, but the trial court's ultimate ruling as to whether suppression is warranted is reviewed *de novo.*" *Bass*, 2021 IL 125434, ¶ 21. Second, a reviewing court may make its own assessment of the facts and may draw its own conclusions when deciding what relief should be granted. *People v. Pitman,* 211 Ill.2d 502, 512 (2004). The trial court's ultimate decision is reviewed *de novo*. *Id* at 512.

¶ 20    The fourth amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend IV.

¶ 21    ¶ 31 Article I, section 6, of the Illinois Constitution of 1970 provides:

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly

describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

¶ 22 "A search conducted without prior approval of a judge or magistrate is *per se* unreasonable under the fourth amendment, subject only to a few specific and well-defined exceptions." *People v. Bridgewater*, 235 Ill. 2d 85, 93 (2009). Law enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *People v. James*, 163 Ill. 2d 302, 312, 645 N.E.2d 195, 200 (1994). "To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 23

¶ 23 Torres argues that the trial court erred in denying his motion to suppress because there was no warrant to search his vehicle, and no warrant exception existed when the vehicle was searched. Specifically, Torres claims no evidence supports the inventory search exception to the warrant requirement. In denying Torres's motion to suppress, the trial court did not find that an inventory search had taken place. Instead, the court determined that an inventory search would have been done prior to the vehicle being impounded.

¶ 24 An inventory search is a judicially created exception to the warrant requirement of the fourth amendment. *People v. Hundley*, 156 Ill. 2d 135, 138 (1993). The three requirements for a valid warrantless inventory search are:

> "(1) the original impoundment of the vehicle must be lawful; (2) the purpose of the
> inventory search must be to protect the owner's property and to protect the police
> from claims of lost, stolen, or vandalized property and to guard the police from

danger; and (3) the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search."

¶ 25    Torres cites *People v. Williams*, 2022 Ill. App (1st) 190496 and *People v. Clark,* 394 Ill. App. 3d 344 (1st Dist. 2009), as support for his claim that the search of his vehicle was invalid. In *Williams,* the defendant was sitting in his car with his lights on in a restricted parking lot. *Williams,* 2022 Ill. App (1st) 190496, ¶8. An officer on patrol approached the defendant and witnessed the defendant bend forward and downward. *Id*. After checking the defendant's license, the officer discovered there was an outstanding warrant for his arrest. *Id*. ¶12. During a preliminary warrantless search of the defendant's car, the officer did not find anything of note. *Id*. ¶13. Eventually, the officer removed a loose panel, covering the center console, and found a semi-automatic pistol and ammunition. *Id*.  Defendant filed a motion to suppress, arguing that the search was invalid under *Arizona v. Gant*, 556 U.S. 332 (2009). *Id* at ¶23. The State did not make any arguments in defense of the search. *Id*. The trial court denied the motion, reasoning that the car would inevitably be searched because the car was parked in a restricted lot and there was a warrant for the defendant's arrest. *Id*. ¶ 25.

¶ 26    On appeal, this court found that the actual search performed was unlawful because there was no evidence or claim that the defendant was within reaching distance of an interior compartment of his vehicle at the time of the search. *Id*. ¶¶ 49-50. The court further found no claim or evidence to demonstrate the search was based on probable cause to support the automobile exception to the warrant requirement. *Id*. ¶51. The court also found that an inventory search would not apply because: the arresting officer testified that the car would be impounded due to a gun being found during the search; and the officer was not executing a police caretaking procedure. *Id*.

¶52. As a result, the court found the State did not rebut the defendant's *prima facie* case that the warrantless search of his car was unlawful. *Id*. ¶53

¶ 27    In *Clark*, police officers stopped the defendant for failing to make a complete stop at a stop sign. *Clark,* 394 Ill.App.3d at 345.  After the defendant could not produce identification, he was arrested and a warrantless search was conducted of his vehicle, which revealed cocaine in the rear ashtray. *Id.* The defendant filed a motion to quash the arrest and suppress the evidence discovered. *Id*. The arresting officer testified he performed a warrantless search because the vehicle would be towed. *Id.* at 346. The trial court denied the defendant's motion, finding that the search of the defendant's car was valid as incident to the towing under police department policy. *Id.*

¶ 28    On appeal, the State argued that the defendant's vehicle was properly impounded pursuant to police policy because: the vehicle would be a hazard if it were left on the street; and it needed to be protected from damage or theft. *Id.* at 348. This court found insufficient evidence to show the officer was acting pursuant to standardized police procedure in deciding to tow the vehicle. *Id.* at 349. The court rejected the State's argument, explaining that "no cognizable reason for the impoundment was shown to justify the subsequent search conducted pursuant to it." *Id.*

¶ 29    The State argues that *Williams* and *Clark* have no bearing on the case before us because unlike the contraband in *Williams*, the contraband discovered here was in plain view. The State explains that the officers did not perform an invasive search like the officers in *Williams* because the officers here found the ammunition clip by simply opening the driver-side door to exit the parked vehicle. The State also argues that *Clark* is inapposite because Torres committed an impoundable offense that would align with standard police procedure.

¶ 30    Here, Officer Delatorre moved the vehicle because it was impeding traffic. When Officer Delatorre exited the vehicle and saw the ammunition clip in plain view, Torres admitted to Officer

Ellison that there was an ammunition clip in the vehicle. Subsequently, Officer Ellison found a gun in the vehicle. We find probable cause existed to search Torres's vehicle because Torres admitted that there was an ammunition clip in the vehicle, and Officer Delatorre saw the clip in plain view. Such information and findings would leave a reasonable person to believe the vehicle contained contraband or evidence of criminal activity (i.e., a gun). See *People v. Stack*, 244 Ill.App.3d 393, 397 (1993).

¶ 31    In reaching this conclusion, we find *People v. Gutierrez,* 2022 IL App (1st) 192483-U instructive. In *Gutierrez*, the defendant was stopped when patrolling officers observed that he was driving with a "shattered" windshield. *Id.* ¶4. After being stopped, the defendant attempted to flee on foot, but was apprehended by the officers. *Id.* ¶5. The officers asked the defendant, while escorting him to the police vehicle, if he had anything inside his vehicle. The defendant responded, "No." One of the officers asked if he had a "pull"[1] in the car, the defendant responded "Yeah." *Id.* ¶8.  The defendant also admitted he was subject to multiple warrants for his arrest. *Id.* ¶12. When asked what he was doing in the area, the defendant replied that he was trying to fix his window, and he had a pistol because of "all this s*** that's going on." *Id*. One of the officers returned to search the defendant's vehicle and found a firearm on the driver's side of the vehicle. *Id.* ¶18.

¶ 32    The trial court found the defendant guilty of armed habitual criminal and unlawful use or possession of a weapon by a felon. *Id.* ¶17. On appeal, the defendant argued his trial counsel was ineffective for failing to file a motion to suppress the firearm because the search was illegal, and the officers lacked probable cause to search his vehicle.  *Id.* ¶19. This court found that the search of the vehicle was supported under the automobile exception because the officers had probable

---

[1] The officer testified that "[a] pull is usually a reference on the street for a gun or a firearm."

cause to believe the vehicle contained "contraband of evidence or criminal activity." *Id.* ¶32. The court explained that the defendant's admission that there was a firearm in the vehicle, taken with his initial false exculpatory statement, his conduct in distancing himself from the sedan and fleeing from police, and his admission that he was subject to multiple warrants for his arrest, provided the officers with probable cause to search the sedan under the automobile exception. *Id.* ¶28. As a result, this court affirmed the trial court's judgment. *Id.* ¶33

¶ 33    Here, the officers had probable cause to search Torres's vehicle due to the fictitious license plates. Under Chicago Municipal Code § 9-80-220 (c), a vehicle operating with fictitious plates is an impoundable offense. Torre's admission to Officer Ellison that there was an ammunition clip in the vehicle, and Officer Delatorre's discovery of the ammunition clip on the driver-side door panel also provided the probable cause to search the vehicle. *Stack*, 244 Ill.App.3d at 397. We find that the totality of facts and circumstances, known to the officers when they began the search of Torres's vehicle, justify a reasonable person's belief that the vehicle contained contraband or evidence of criminal activity. *People v. Hill*, 2020 IL 124595, ¶ 23. Hence, the trial court did not err in denying Torres's motion to suppress.

¶ 34    Torres does not dispute whether the arrest was unlawful, but instead, he argues that his conviction should be vacated because he was seized in an unreasonable manner prior to the search of his vehicle. Specifically, he claims the officers' actions were too aggressive for a traffic stop. He further claims that the officers "did not conduct what a reasonable person would expect in an encounter for a traffic stop, nor did they interact with [him] consistent with an investigation for a non-violent misdemeanor offense." The State argues that Torres has forfeited this issue because he raised the issue for the first time on appeal. However, waiver and forfeiture are limitations on

the parties and not the court, and we will consider Torres's argument. *People v. Custer*, 2019 IL 123339, ¶ 19.

¶ 35 The seizure of a vehicle is reasonable when police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). It is well established that "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." (Internal quotation marks omitted.) *People v. Harris*, 228 Ill. 2d 222, 235(2008) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)). A lawful seizure can become unlawful if it is prolonged beyond the time reasonably required to complete the traffic stop. *Id.* at 235-36. To determine the reasonableness of a seizure, we are required to balance law enforcement's need to seize against the resulting invasion. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968). Whether the duration of a seizure is permissible depends on the purpose of the stop, and we apply "common sense and ordinary human experience" in our analysis. *United States v. Sharpe,* 470 U.S. 675, 685 (1985).

¶ 36 Here, given that Torres was driving a vehicle with fictitious plates; "zooming" through traffic and making furtive movements prior to the stop; admitting to Officer Ellison that there was an ammunition clip in the vehicle; and Officer Delatorre discovering the ammunition clip on the driver-side door panel, the seizure of Torres was not unreasonable.

¶ 37                                    IV. CONCLUSION

¶ 38 Based upon our review, we find that the trial court did not err in denying Torres's motion to suppress. For the reasons above, Torres's conviction for aggravated unlawful use of a weapon is affirmed.

¶ 39 Affirmed.